## COURT OF APPEALS.

### March 8, 1921.

## THE PEOPLE v. JAMES L. ODELL.

(230 N. Y. 481.)

(1) MURDER—SUFFICIENCY OF EVIDENCE TO WARRANT CONVICTION OF MURDER IN FIRST DEGREE.

The evidence upon the trial of defendant charged with murder in the first degree, examined, and *held* sufficient to justify the jury in finding beyond a reasonable doubt a premeditated and deliberate intent on the part of defendant to kill.

(2) SAME—CHARGE COMPOSED LARGELY OF LEGAL DEFINITIONS GIVEN ABSOLUTELY INSUFFICIENT.

A charge which is largely a statement of legal definitions of the degrees of felonious homicide, of reasonable doubt and the like, given abstractly and with little if any material reference to the evidence is insufficient. The better practice for the court in a criminal case, emphatically in a capital case, even when uninvited by the defendant, is to present to the jury the case on trial in all the phases in which the jury ought to consider it.

(3) SAME—OMISSION OF TRIAL JUSTICE TO PRESENT TO JURY QUESTION WHETHER DEFENDANT CAUSED DEATH OF DECEDENT, ERROR.

The omission of the trial justice to present to the jury in any definite way the questions whether defendant caused the death of the decedent, and his omission to discuss the evidence on which defendant would be entitled to an acquittal would constitute substantial error had not defendant's evidence established beyond a reasonable doubt motive, preparation and intent to commit a brutal assault, as an immediate sequence to which death by violence indisputably appeared, and had not the trial justice stated generally in the language of the Code of Criminal Procedure that in case of a reasonable doubt as to whether his guilt is satisfactorily shown a defendant is entitled to an acquittal. On the merits, the substantial rights of defendant were not affected and the conviction should be affirmed.

APPEAL from a judgment of the Supreme Court rendered April 23, 1920, at a Trial Term for the .county of Monroe,

upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Hampton H. Halsey,* for appellant.    The defendant was not guilty of murder in the first degree for the reason that the three elements necessary to constitute that crime, namely, design or intention, deliberation, and premeditation, were not shown by the People to have existed in this case and the verdict was contrary to the evidence.    (People v. Barberi, 149 N. Y. 267; People v. Conroy, 97 N. Y. 62; People v. Wood, 126 N. Y. 249; Leighton v. People, 88 N. Y. 117; People v. Beckwith, 103 N. Y. 360.)    The facts proved show that the killing of Edward J. Kneip was done in self-defense, and the court erred in its charge when it deprived the appellant of having that theory of the case submitted to the jury.    (People v. Austin, 1 Park. Cr. Rep. 154; Patterson's Case, 3 City Hall Rec. 145; People v. Lamb, 54 Barb. 342.)    The court's charge as a whole was prejudicial to the appellant, *first,* in that it ignored his theory of defense entirely and failed to instruct the jury as to the bearing or effect which the evidence favorable to him had upon the case, and *second,* because the charge consists of a collection of definitions taken from statutes and decisions of the courts, which were presented to the jury in an abstract manner without any instruction to the jury as to how they should apply the law to the facts in this case.    (1 Bishop Crim. Proc. [4th Ed.], § 978; People v. Leonardi, 143 N. Y. 360; People v. Canton, 71 App. Div. 385.)

*William F. Love, District Attorney (James P. O'Connor,* of counsel), for respondent.    The verdict of guilty of murder in the first degree involving premeditation and deliberation and design or intent to kill was amply supported by the evidence and properly found by the jury.    (People v. Sutherland, 154 N. Y. 345; People v. Farmer, 194 N. Y. 259.)    Self-defense

was not interposed by the defendant as a defense and there is no evidence in the case warranting the submission of the question of self-defense to the jury. (People v. Mallon, 116 App. Div. 425, 189 N. Y. 520; People v. Foster, 50 N. Y. 598.)

POUND, J.:

Defendant was indicted in the county of Monroe for the crime of murder in the first degree committed on January 7, 1920. The indictment charges that he and Pearl Odell caused the death of one Edward J. Kneip. On a trial he was found guilty on April 23, 1920.

Defendant, a young machinist and musician by trade, formed an affection for a girl, Pearl Beaver, and after keeping company with her proposed marriage late in 1919. He was then twenty-two years old; she was about seventeen years old. She did not want to marry him, so she told him, because she had been wronged by Kneip and was, therefore, unworthy of Odell. However, they lived together for two weeks on Adams street in Rochester, were married on December 15, 1919, and went to live with Mrs. Arnold, who was defendant's stepmother.

Shortly thereafter the girl went into details about the Kneip affair and told defendant that she had been doped with poisoned chocolates by Kneip and her resistance to the first sexual act thus overcome; that she had afterwards had connection with him under promise of marriage; that he had proposed " unnatural things " to her, struck her, told her she was not the first girl he had broken in; that their relations had been broken off in June. She was wrought up and was threatening to commit suicide. Kneip had met her and insisted that she go out with him, threatening to tell Odell about their previous relations if she did not. This also came to the knowledge of defendant.

Defendant did not know Kneip. He took the matter up with the police judge of the city of Rochester and with a lawyer called Judge Bryan with the idea of having Kneip prosecuted for rape. They told him that without corroboration of his

wife's story a conviction could not be had, but that Kneip's confession would be corroboration. Defendant then on January 3d purchased handcuffs. He had a revolver which he says was worthless, and also a gold badge. On January 7th he went in an automobile to Gleason's where Kneip worked, having previously sought him at Saucke's, and when he came in at 6:25 p. m., the night time clerk having identified him, put the handcuffs on him, handcuffed him to the robe rail of the car and took him to the Arnold house, where in the presence of Mr. Arnold he admitted that he had repeatedly had sexual intercourse with Pearl. Defendant then took Pearl and Kneip in the car and started away. Defendant says that, having obtained the confession, he started for police headquarters (but if so he went by a devious route); that the car stalled on Griffith street; that Kneip coarsely expressed a desire to urinate; that defendant took him out of the car to a convenient place and upbraided him for using such language before Pearl; that Kneip said she was a little whore anyway. Deceased did not at that time know that defendant was Pearl's husband. He had called himself Detective Arnold and Kneip seems to have thought that he was under arrest, for he offered no resistance, yet seemed in no fear. Odell was slight and Kneip was the bigger and stronger. Defendant's theory here is that he was so enraged at Kneip by this comparatively trivial incident that he gave up the idea of going to police headquarters and decided to take the law into his own hands. Defendant then hired a taxicab. The three drove into the country, out the Scottsville road to the Mosquito Point road. At the corner they got out, paid the driver of the car and discharged him. Defendant had a file and Kneip had a small knife attached to a watch chain. They then walked westerly to a culvert of the old Genesee Valley canal, turned on to the towpath and went along several hundred feet to a tree. The facts thus far are undisputed.

On the morning of January 8th, Kneip's dead body, dressed

only in a union suit and a blue shirt, was found near the culvert. The skull was crushed and macerated and there were cuts on the body. Death was due to the fractured skull. A large club rested on the shoulders and side of the head. Snow was on the ground; handcuffs, pieces of the revolver, the machinist's file, a knife and chain, a bundle containing Kneip's clothing and the heel of Pearl's shoe were found in the vicinity. Footprints and blood stains were also found, indicating that a struggle had occurred in two of three areas; the first around the base of the tree, the second about fifteen feet away, in a third area north of the second the snow was also trampled.

Mrs. Odell and the defendant were arrested and on the night of January 8th Odell made a statement to the coroner and the district attorney which was taken stenographically and read in evidence on the trial. After stating the facts in substance as previously narrated, he went on to say that when they left the taxicab he handcuffed Kneip to the tree and told Pearl " to do to him what he did to you"; to pay him back; that she started hitting him with a file; he went down; defendant hit him with the revolver; they took the handcuffs off; thought they had killed him, but went around to see if he were really gone. Kneip then jumped up and hit him. They had a fight in the second area; Kneip went down again; they took his clothes off and hid them; defendant did this for his wife; he undertook to hide the body; dragged it to the third area; defendant hit Kneip once with a chunk of wood; it was dark; couldn't say that he hit him on the head; also cut him with a knife. Kneip offered no resistance to being taken along handcuffed; Odell says he did not mean to kill him. No explanation is offered of Kneip's lack of resistance, when he discerned the purpose of the Odells, but he may have been intimidated by the unloaded old rusty revolver.

On the trial, defendant testified in his own behalf. Pearl also testified but stopped with the incident on Griffith street above mentioned. She also being under indictment, under

advice of counsel, declined to give further evidence. Defendant said on the trial that he started out to take Kneip to police headquarters and decided to take him into the country to punish him for what he had done to Pearl after they left Griffith street; that they handcuffed him to the tree and hit him—Pearl with the file, he with the revolver, both of which came apart; they took off the handcuffs and Kneip went down to his knees, the blood coming down his face. They did not think Kneip was dead but released the handcuffs so he could get up and go, and they started home; went back to get a letter out of Kneip's pocket. As they bent over him, he jumped up and attacked defendant. Pearl got him off and he pursued her. Defendant in turn pursued Kneip who grappled with him again and was choking him to unconsciousness when Pearl came up behind Kneip. When defendant regained consciousness Kneip was on the ground, dead. Then they took off his clothes and carried the body to the culvert. Odell suggests that he might have struck the dead body, which would perhaps explain the fractured skull as he would desire us to understand it.

The case is free from exceptions to the admission or exclusion of evidence. Defendant's counsel made no requests to charge the jury and took no exceptions to the charge as made. No questions of law raised by exceptions are argued or arguable. It is now contended that the People failed to make out their case; that the evidence was insufficient to justify the jury in finding beyond a reasonable doubt a premeditated and deliberate intent on the part of defendant to kill Kneip; that the case was improperly submitted to the jury.

Defendant made preparations to give Kneip a brutal punishment. His motive to avenge his wife's wrongs is clearly revealed. When he talked to the lawyer Bryan he said: " Such a man ought not to be allowed to live, he ought to be killed." Nothing could be more deliberate than the formation and execution of his plans to take Kneip to the scene of the killing.

In his statement he says, " We thought we had killed him," and a reasonable inference is that they went back to make sure that he was dead, and, if he was not, to finish the job. The condition of Kneip's skull indicates the deadly nature of the assault upon him.

While the jury might on the evidence have found defendant guilty of the crime charged in the indictment, or of a lesser crime, an acquittal would not have been justified unless defendant's testimony was sufficiently convincing to create a reasonable doubt as to whether the admittedly severe beating that he took part in inflicting on Kneip would have caused death and as to whether after that was all over and while defendant was in retreat and helpless, Pearl had killed Kneip in defense of her husband's life. Defendant made no claim on the trial that he killed Kneip in self-defense and the evidence contains no suggestion that he did. On the contrary, he testified that he did not kill Kneip; that he was unconscious when the killing occurred. The only reasonable inference from this statement alone is that his wife did the killing when he was unconscious. The jury found against the defendant on this point and the conviction must be sustained unless (Code Crim. Proc., § 528) it appears that he did not have a fair trial.

The instructions are subject to criticism not wholly technical in this regard. The court's charge is of supreme importance to the accused. It should be the safeguard of fairness and impartiality and the guarantee of judicial indifference to individuals. Defendant's case on its own facts was before the jury, not the case of the mere abstraction—" a person charged with crime," yet the charge is largely a statement of legal definitions of the degrees of felonious homicide, of reasonable doubt and the like, given abstractly and with little if any material reference to the evidence. The better practice for the court in a criminal case, emphatically in a capital case, even when uninvited by the defendant, is to present to the jury the case on trial in all the phases in which the jury ought to consider it.

(People v. Fanning, 131 N. Y. 659, 663.)   Much latitude must be allowed in the application of this precept, but to charge in such a case as this without adverting in any respect to the testimony might result in harmful prejudice.   The trial judge should not as a rule limit himself to stating good set terms of law culled from the codes and the reports.   Jurors need not legal definitions merely.   They require proper instructions as to the method of applying such definitions after reaching their conclusions on the facts.

While the failure to comment on the details of the testimony is not in itself everywhere and always error, and a general charge is all that is required by Code of Criminal Procedure (§ 420), a more serious oversight appears in the omission of the trial justice in this case to present to the jury in any definite way one of the questions that defendant might have sought to have presented—did defendant cause the death of Kneip ?   This omission inadvertently made the charge less full and fair than it should have been for the reason that, in face of the rule that the court has no power to direct or even advise a verdict of guilty, the trial justice seems in several places to be instructing the jury to convict, although informing them that they are exclusive judges of the facts.   In one place he says that he has stated " the law which must guide you in determining of *which of these crimes* and of which degree this defendant *has been proven guilty here,*" and at the end of the charge, when explaining the rule as to conviction of a lower degree of crime than that charged in the indictment, he says:   " If in your consideration of this case, gentlemen, you have a reasonable doubt as to whether or not *this man* is guilty of murder in the first degree and you have no reasonable doubt as to whether he is guilty of murder in the second degree your verdict *must be* one of murder in the second degree.   If you have a reasonable doubt with regard to these two degrees of murder, but have no doubt as to whether or not he is guilty of manslaughter in the first degree, you must give him the benefit of these doubts and *convict him*

of manslaughter in the first degree. I do not think the facts in this case warrant my submission to you of the question of manslaughter in the second degree. Take the case." It seems to have been tacitly assumed all around, although defendant swore that the last moment he saw Kneip alive Kneip was choking him into unconsciousness, that he had in fact caused Kneip's death. The jury had been correctly instructed, in the language of the Penal Law, that *no person* can be convicted of murder or manslaughter unless the fact of the killing by the defendant is established as an independent fact beyond a reasonable doubt, but the trial justice thereafter said that he did not mean to exclude from the consideration of the jury the evidence of the defendant that he at no time *intended* to kill the decedent and told them to give such evidence the weight to which it was entitled. This is practically the only reference to the evidence in this case contained in the charge. If the defendant's evidence did not establish beyond a reasonable doubt, motive, preparation and intent to commit a brutal assault and if death by violence as an immediate sequence did not indisputably appear, and if the trial justice had not stated generally in the language of the Code of Criminal Procedure that in case of a reasonable doubt as to whether his guilt is satisfactorily shown a defendant is entitled to an acquittal, it might be said that the omission, under the circumstances of this case, to discuss the evidence on which this defendant would be entitled to an acquittal was substantial error and that defendant had not had a fair trial. We think, however, that we should not reverse the judgment because of this omission. " It is inconceivable that the verdict of the jury would have been different had it been " supplied. (People v. Sarzano, 212 N. Y. 231.) It is not suggested that the trial justice committed the error of influencing a conviction. His charge, so far as he went, was colorless and, as we have heretofore indicated, defendant's counsel was at fault in failing to request a proper instruction, but if its defects are allowed to pass unnoticed it may be accepted as an approved

form, safely to be followed in other cases.    To withhold such implied approval, it has been somewhat fully analyzed.

On the merits, however, the conviction should be affirmed for the reason that the substantial rights of defendant were not affected and justice does not require a new trial.

The judgment of conviction should be affirmed.

ANDREWS, J. (dissenting) :

One Kneip was killed and his dead body was found beneath a bridge which crossed the dry bed of a canal.    Evidently it had been dragged there from some distance.    There was a wound made by a small knife which penetrated the liver.    A rib was broken and the left lung collapsed.    Either of these injuries might have become fatal in time but probably would not have disabled him immediately.    On the body were other superficial cuts made with a knife.    The top of his skull was macerated. He must have been struck repeatedly.    This injury was what caused his death, and it would at once have made him helpless. Snow was on the ground and the story of the crime can in part be reconstructed from the marks that were discovered.    Three people were present, a woman and two men.    From the road their footprints led to a tree some 700 or 800 feet away, standing on the bank of the canal.    In the space around the tree was blood and it was trodden down.    The tracks of a woman and at least one man then led to a spot distant some twelve or fifteen feet, down the bank of the canal and there was a mark as if a body had rolled down the slope.    At this point again for a space of seven or eight feet in diameter the snow was trampled and there was considerable blood.    Twenty-five feet further on there was a similar appearance with more blood, the footprints leading to it.    Near this point was found part of Kneip's clothing.    It had been made into a bundle and tossed over a fence. And thence down to the bridge was a mark as if something had been dragged and on one side of this mark were the footprints of a man and on the other those of a woman.    Nearby were

found the fragments of a revolver, a pair of handcuffs and a machinist's file, which seem to have been traced to the possession of the defendant. A small knife which is said to have belonged to Kneip was not far away.

There is no dispute but that the defendant and his wife were present and were the only ones present when Kneip was killed. One or both must have killed him. The People gave evidence sufficient to justify a finding of the jury that whoever committed this homicide was guilty of murder in the first degree. Motive on the part of both Mr. and Mrs. Odell was shown. The defendant's own story negatives the idea that if he did himself kill Kneip he was acting in self-defense. Further, if the actual killing had been done by Mrs. Odell the jury might have found that it was the result of a conspiracy and that the defendant was an accomplice. The verdict of conviction was based upon many circumstances not recited here and upon a confession made by the defendant after his arrest. Clearly it was not against the weight of the evidence.

If, however, the jury believed that Kneip was not actually killed by Odell and that Odell was not a principal in the commission of the homicide within the definition of section 2 of the Penal Law, but that although he started to give Kneip a beating, the latter's death was caused by the independent act of Mrs. Odell for which he was not responsible, or if they had a reasonable doubt on this subject, then they should have acquitted the defendant. This might have been the conclusion reached from Odell's testimony on the stand.

He says he never intended to kill Kneip. Of any such plan he and his wife were innocent. They wished simply to beat him as a punishment for wrongs done to Mrs. Odell and for his slander of her. He handcuffed Kneip to the tree first mentioned. He then struck him on the head with a revolver. Mrs. Odell struck him at least twice with the file. Kneip was rendered unconscious. His body sank to the ground. Odell then removed the handcuffs and he and his wife started to leave

the spot.    They did not believe he was dead.    Coming back, however, in search of a letter in Kneip's pocket they found that he had rolled down the bank.    Odell opened Kneip's coat to obtain the letter and at that Kneip, who had become conscious, struck him and they had a struggle.    Mrs. Odell came to the rescue of her husband and struck Kneip.    Kneip turned on her and she started to run down the canal with Kneip after her.    Odell who had fallen jumped up and followed.    After going some little distance Kneip stumbled and fell.    Odell came up with him and kicked him.    Kneip and he again had a struggle.    Kneip had the best of it.    Getting his hands on Odell's throat he began to choke him.    Mrs. Odell again came to his rescue and at this time Odell lost consciousness.    When he came to Mrs. Odell was unfastening his collar and Kneip lay dead beside him.    His inference is that during the interval Kneip was killed by his wife.    Odell and Mrs. Odell then took off much of Kneip's clothing to prevent identification and drew the body to the bridge to hide it.    In some particulars this statement is consistent with the physical signs which have been described.

Although the story may be improbable, it is not incredible as a matter of law and how much faith is to be given to it is not for us to say.    The question of its truth was presented and upon this question the jury must pass.    Only if they disbelieved Odell's testimony or refused to give effect to inferences that might fairly be drawn from it, might they convict him of murder in the first degree.    This was the precise problem before them.    They may have so understood their duty.    Yet if they did, it was in spite of the fact that their attention was called to it neither by the counsel nor by the court.

The learned trial judge in his charge with sufficient accuracy defined the various degrees of homicide, read the section of the Penal Law defining principals, properly gave the legal rules as to the presumption of innocence and as to reasonable doubt and the meaning of the term, told the jury that they were the

judges of the facts, gave the rules as to the testimony of a defendant, as to the effect of a confession, as to the effect of character evidence and as to intent, and then without any reference to the facts closed by telling the jury that if they had a reasonable doubt whether this defendant was guilty of murder in the first degree and had no reasonable doubt but that he was guilty of murder in the second degree their verdict must be for murder in the second degree. If, however, they had a reasonable doubt with regard to these two degrees of murder but had no doubt as to whether he was guilty of manslaughter in the first degree they must give him the benefit of these doubts and convict him of manslaughter in the first degree. Previously, in defining premeditation and intent, the court had charged the jury that he stated the law which must guide them in determining " of which of these crimes and of which degree this defendant had been proven guilty here."

It is said that as a whole the jury was instructed that the defendant must be convicted of one of these three degrees of crime. While the charge may not have been as clear upon this subject as might be wished, I think it left no room for misunderstanding. If there was a reasonable doubt, they had been told, of the defendant's guilt in a criminal case he was entitled to an acquittal and that if there were such a doubt in this case the defendant was entitled to the fullest benefit of it. They were told also that they were the exclusive judges of the facts. The jury could not have been misled. Even had they inferred that in the opinion of the judge the defendant was guilty, this is no reason for reversal if the ultimate decision is left to them.

More serious trouble, however, arises from the failure of the trial judge to refer to the testimony in the case before him, with the respective theories and claims of the State and the defendant and to point out the application to such testimony and claims, of the principles of law which he enunciated. I am aware of the impossibility of formulating any general rule as to a charge, or of stating in what detail the evidence should

8

be reviewed. But this at least is true. The charge is intended to aid a jury of laymen in the decision of the material issues of a case. It is to point out what are the kind of facts, among a great number before them, some material and some immaterial, that bear upon these issues. It is to assist them in reaching a just result, to aid in securing a fair and impartial trial. None of these objects is attained by a mere statement of legal definitions. Some idea, at least, must be given of their bearing upon the concrete case at issue.

Here nothing of the kind was done. It was not said that the defendant claimed he was guilty neither of murder nor of manslaughter. Substantially no reference is made to the testimony on either side. There is no hint as to the defendant's story or that if certain inferences are drawn from it he is entitled to an acquittal. Nor is there any suggestion as to the material facts which the jury are to decide. With no help whatever certain abstract legal propositions are laid down, and they are then told to bring in their verdict. I am not willing to say under these circumstances that on a trial for murder, where there is conflicting testimony, where if one story is true an acquittal might result, the defendant has had a fair trial or that his conviction should be sustained. However guilty he may be, we should not ignore the failure to properly protect his rights. The probability is that the jury never understood the issue of fact they were called upon to decide. At least, whether they did or not is most doubtful. Had they done so it is quite possible they would have reached the same result. We cannot, however, make this assumption.

I think the judgment of conviction should be reversed and a new trial ordered.

CARDOZO, McLAUGHLIN and CRANE, JJ., concur with POUND, J.; HISCOCK, Ch. J., and HOGAN, J., concur with ANDREWS, J.

Judgment of conviction affirmed.