THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* TONY CARLSONAKAS and Another, Appellants.

First Department, May 18, 1934.

*Francis Martocci* of counsel [*Merwin F. LeVine* with him on the brief; *Francis Martocci*, attorney], for the appellants.

*Erwin N. Schapira, Deputy Assistant District Attorney*, of counsel [*William Copeland Dodge, District Attorney*], for the respondent.

MARTIN, J. On the morning of April 6, 1933, at Forty-second street near Eighth avenue, New York city, the complainant Chris Christopos was stabbed. As a result thereof he was confined to a hospital for nineteen days. While walking toward his home from the subway station at Forty-second street and Seventh avenue, the two defendants set upon and assaulted him with knives. Although he attempted to leave the scene of the fray and tried to protect himself, he was cut on the arm and on the left thigh and was still being attacked when the assault was stopped by a deputy sheriff.

Charles Weinberg, a friend of the complainant, testified that he had left a moving picture theatre and was going to work when he saw the defendants attack the complainant. Each defendant had a knife. The witness said he thought that the defendant Flessas struck the first blow.

Two very important disinterested witnesses were produced by the People, Deputy Sheriff Kerr and his friend Thomas Carr. They both testified that they were standing outside a restaurant on Forty-second street near Eighth avenue when their attention was drawn to the complainant, who was running around the rear of a taxicab pursued by the defendants, each of whom had a knife in his hand and was striking at the complainant. The witness ran to the place where the assault was in progress. Kerr drew his revolver and caused the defendant Carlsonakas to drop his knife into the gutter where it was found by a man named Creedon, a friend of Deputy Sheriff Kerr. The witness Carr testified that he struck Flessas on the jaw and then the defendants submitted and were taken to the police station house.

Detective Meehan said he questioned the two defendants while there and they told him that some time prior to the fight the defendants and complainant were engaged in a card game and some " funny cards " were used, as a result of which a fight started and the complainant struck the defendant Carlsonakas. The defendants then told the detective that on the morning in question, April sixth, the complainant first talked to them and then attacked and struck Carlsonakas, but said they did not know anything about the knives.

The defendant Flessas testified in his own behalf. He said that the complainant on the morning in question approached the defendants, placed his hand in his pocket, took out a knife and ran toward and attempted to assault them. The witness said he struck the complainant causing him to fall and that the deputy sheriff stopped the fight. He denied that he stabbed the complainant.

The jury convicted the defendants upon the testimony of Kerr, Carr, Weinberg, Detective Meehan and the complainant. We have referred to the evidence to show that there was no doubt about the identity or guilt of the defendants. The overwhelming evidence clearly established both

The defendants now appeal, contending that the court committed prejudicial error in admitting and excluding evidence, in its charge to the jury and in remarks made during the trial. The defendants argue that they did not receive a fair trial, especially in view of the charge of the trial judge. It is asserted that he went far beyond the bounds of propriety and made it clear that there was no question

about the guilt of the defendants, insinuating that the jury should not devote much time to a consideration of the case.

There is no doubt that the statements by the trial court at the beginning of the charge to the jury might well have been eliminated. They were unnecessary and in a closely contested case might be considered prejudicial to the interests of a defendant. However, in view of the fact that the evidence is so overwhelming and the proof of guilt so conclusive, we think the judgment of conviction should be allowed to stand.

Several other matters occurred during the trial and the charge which at the time were apparently considered of no importance, but are now urged as a ground for the reversal of this judgment.

Frequently during a trial insignificant incidents occur which are later magnified in the hope of securing a reversal of the judgment. At the time these alleged errors arise they are of no passing moment and are either wholly unnoticed or entirely disregarded. If these same matters were then called to the attention of the court they could be corrected or readily remedied. It is unfair to a judge presiding at a trial to pass over such occurrences at the time as insignificant and then rely upon the same for a reversal of the judgment.

Every right-thinking person approves of the principle that a defendant should be given a fair trial and that there should be no question about its fairness. On the other hand, the trial of criminal cases should not be made so technical that it will be impossible to conduct one without falling into reversible error. We occasionally find that incidents which occur on a trial, when called to our attention on appeal are so enlarged upon that they must be very much discounted.

The contention of the defendants that they were prejudiced by an unfair trial is without merit. It should be noted that counsel in nowise specifies in what way the jury might have been affected by the actions of the court during the course of the trial. While the record may contain apparent errors, they surely cannot be deemed sufficient to require a reversal of the judgment, in view of the strong case presented by the People. (See *People* v. *Ferola*, 215 N. Y. 285; *People* v. *Trybus*, 219 id. 18, 23; *People* v. *Sarzano*, 212 id. 231.)

We have recently had occasion to call attention to the fact that the trial court should be impartial in the trial of all cases. The decisions on this subject are so numerous and so emphatic that it seems unnecessary to call attention to the statements set forth therein. It may be that in a desire to prevent the acquittal of the guilty, a court at times may be of the opinion that it is necessary to impress the facts on the jury. Under our system of jurisprudence,

the court is not permitted upon the trial or in the charge, to unduly interfere with the functions of the jury. All questions of fact are for the jury. The court must state the law, but it is not permitted directly or indirectly to express an opinion to the jury.

The trial judge may be impatient with a defense, but he should not indicate such impatience by remarks made during the course of the trial or in the charge to the jury to the prejudice of a defendant. The trial should in fact, as well as in theory, be fair and impartial.

We do not believe it should be necessary to call attention to the manner in which cases should be tried. The trial of a criminal case in most instances is a simple matter and any judge should be able to conduct it without any difficulty. In fact, a case of this character may be quickly disposed of if the facts are placed before the jury in a clear and concise manner, with a simple, intelligent statement of the law applicable thereto. The trial of an action is a search for the truth so that principles of justice may be applied to the facts. That result may be accomplished by following time-honored rules and precedents which have served the purpose very satisfactorily for many years.

Applying section 542 of the Code of Criminal Procedure, which permits the affirmance of a judgment where no substantial right of a defendant has been prejudiced, we are of the opinion that this judgment should be affirmed. The defendants were proved guilty beyond a reasonable doubt and the conviction should, therefore, be affirmed.

FINCH, P. J., and MERRELL, J., concur; O'MALLEY and UNTER-MYER, JJ., dissent and vote for reversal and a new trial.

UNTERMYER, J. (dissenting). The defendants were tried jointly and have been convicted of assault in the second degree. The evidence created an issue of fact, with the disposition of which by the jury we would not be warranted in interfering if the defendants had received a fair trial and no substantial error of law had been committed by the trial judge.

The complaining witness testified that on the occasion in question, he was walking on Forty-second street between Seventh and Eighth avenues at about two o'clock in the morning, when, without provocation on his part, he was attacked by both the defendants, each of whom stabbed him with a knife. He was permitted to testify that, six months before, he had had a dispute with the defendants. This evidence was apparently offered by the prosecution and received by the court upon the theory that it tended to establish a motive for the assault — and, for this purpose, it was clearly admissible. (*People* v. *Thau*, 219 N. Y. 39.)

The defendant Flessas testified at the trial. Although he denied that he had stabbed the complainant, he described a state of facts which, if true, would have constituted a defense of " self-defense." He claimed that he was walking with the codefendant, and " when I first saw the complainant, he started — stuck his hand in his pocket and run towards us," and, with an obscene exclamation, said, " I will fix you now." He testified that he saw a knife in the complainant's right hand; that he thereupon struck him on the jaw with his fist and that complainant fell to the ground; whereupon a crowd gathered and " mixed in the fight." He did not know whether or not, in the struggle that ensued, the codefendant Carlsonakas had stabbed the complainant.

At the beginning of Flessas' examination his counsel sought to elicit facts which he claimed would tend " to show motive on the part of the complainant for being angry at Flessas." Upon the objection of the district attorney that the evidence had " no bearing upon the issue," the evidence was excluded, the court stating, " We are trying this case on what happened the night of April 6th. What happened before that has no bearing." It may be that up to this point no sufficient foundation had been laid for the introduction of this evidence.

After the defendant had testified to the facts above set forth — which if true would have justified the jury in finding that the defendants had acted in self-defense — the defendants' counsel again sought to prove a dispute of some sort which had occurred between the complainant and Flessas three nights before the alleged assault. Upon the prosecutor's objection, the evidence was again excluded, despite the fact that the defendants' counsel stated that he was offering it upon " the question of motive," and reminded the trial judge that " the complainant was permitted to testify what took place six months prior." This ruling, duly excepted to, in my opinion constituted reversible error.

The effect of Flessas' testimony was to accuse the complainant, who himself had previously served a term in prison for assault with a knife, of an assault upon the defendants. If the People's evidence of a dispute six months before was admissible as tending to show a motive on the part of the defendants in committing an assault, then it is obvious that evidence of a dispute three days before the alleged assault tended equally to show a motive on the part of the complainant to assault the defendants. For that purpose the defendants should have been permitted to give their version of the circumstances which caused, and which might have explained, the attack which they claimed the complainant had made upon them. Instead, the People were allowed in this way to show that it was

probable that the defendants had assaulted the complainant while the defendants were precluded from showing by the same means that it was probable that the complainant had assaulted them. The defendants should not have been limited to proof of " threats " made by the complainant, as the trial judge ruled, nor, it may be added, was the prosecution thus limited. The defendants were entitled to establish any facts which would justify the inference that the complainant had a motive in making an attack. The error in excluding this proof, especially when considered in connection with other matters soon to be referred to, was substantial, for it resulted in a situation where, at the conclusion of the case, there was no apparent reason for the complainant to have been the aggressor in the attack.

The People argue that, because Flessas testified that he had not used a knife in repelling the assault, the defense was a complete denial of the charge and did not involve any claim of self-defense. While it is true that Flessas testified that *he* had not stabbed the complainant, the jury might have found that Carlsonakas (the codefendant, who did not testify) had done so and that in so doing he had acted in self-defense. Or again, the jury might have believed the People's evidence that Flessas had used a knife and nevertheless have believed his testimony that he had acted in self-defense.

I turn now to a consideration of the charge of the court. Although no exception was taken, it is so pervaded with a spirit of unfairness to the defendants and contains so many inaccuracies, all to their detriment, that a verdict rendered by a jury so instructed should not be permitted to stand. (Code Crim. Proc. § 527.) What the charge of the court in a criminal case should be was stated in *People* v. *Odell* (230 N. Y. 481): " The court's charge is of supreme importance to the accused. It should be the safeguard of fairness and impartiality and the guarantee of judicial indifference to individuals." The trial judge has the right, of course, to marshal the evidence and to advise the jury of inferences which may be drawn therefrom. But when he exercises that right, it is his duty not merely to marshal the evidence for the prosecution and to advise the jury of inferences unfavorable to the defendant, but to make fair reference to the countervailing evidence on which the defendant relies in his defense. For, if the right to marshal the evidence is exercised with an unequal hand, if instead of a fair presentation of both sides of the case, one side is considered and the other ignored, if the People's case is unduly emphasized and the defendant's proof belittled, then it becomes, or will be considered by the jury, an argument for the conviction of the defendant. The rule to be observed in a criminal case was stated with precision

in *People* v. *Fanning* (131 N. Y. 659, 663, quoted with approval in *People* v. *Becker*, 210 id. 274): " It is proper that a judge should assist the jury in marshalling the evidence so that they may the more readily and intelligently come to a conclusion which shall be satisfactory to themselves, consistent with the evidence and in accordance with the law. The judge should do this in a fair and impartial manner, having due regard to the rights of the defendant and with a serious and anxious desire for their preservation."

We now proceed to compare the charge in the case at bar with the principles thus pronounced for the guidance of a trial judge in charging the jury in a criminal case.

The charge opens as follows: " I understand one of your number is anxious to get away by twelve o'clock, so I will make my charge very brief *and I should not think your deliberations would occupy you very long in this case.*"

In the light of the charge that followed there could not have existed any doubt in the minds of the jury as to what was intended by this statement of the court. It amounted to a suggestion to the jury to convict the defendants and to do so with all possible speed. Not only this, but it could not fail to minimize to the jury the seriousness and importance of their function. It is a common practice, and a commendable one, for the trial judge to impress upon the jury the solemnity of their task and the importance of a careful and correct determination. We ought not to approve the substitution for that admonition of a statement to the jury that their determination, in effect, is perfunctory, to be hastily performed, because the trial judge has formed an opinion concerning the guilt of the accused. This suggestion of the trial judge would alone render necessary the reversal of the judgment, but that conclusion is confirmed by a further consideration of the charge.

Throughout his charge, evidence detrimental to the defendants is emphasized, while the evidence favorable to· them is either weakened or ignored. In referring to the testimony, the court said: " To summarize the testimony, on one hand you have the testimony of the complainant, the testimony of Weinberg, the testimony of the sheriff, Mr. Kerr, and of Mr. Carr, who claimed to be an entire stranger to everybody — each of them is an entire stranger to everybody in the transaction. So far as the defendant Tony Carlsonakas is concerned, there is no testimony offered denying that he participated in this assault. His codefendant said he did not know whether Tony stabbed him or not. That is as far as he would go. And all that the defendant Flessas says is that he did not stab him. As against his story you have Kerr saying he saw him drop the knife. You have Mr. Kerr, the deputy sheriff, saying

he saw a knife in each hand, in the hand of each. All the witnesses have put a knive upon each one of these defendants, and you have the knives produced at the station house and brought here. They lay some stress upon the fact that there was no blood upon them. Nobody knows or is in a position to say what substances those knives went through in the gutter, or where they were picked up."

The claim of the defendants that the complainant was the aggressor in the quarrel and that they had acted in self-defense is nowhere considered nor even referred to by the trial court. The case was submitted to the jury on the theory that the defendants were guilty if they assaulted the complainant, no matter how justifiable this may have been. Instead the jury should have been instructed to acquit if the defendants had acted in self-defense. (Penal Law, § 42.) The jury was told that there was " no testimony offered denying that he [Carlsonakas] participated in this assault." In so charging the jury the court completely disregarded the testimony of Flessas that the complainant had attacked the defendants with a knife, which, if true, would have justified them in using such force as might be necessary to repel the attack. The statement that " all that the defendant Flessas says is that he did not stab him " (the complainant) was, for the same reason, equally inaccurate, for Flessas testified that the complainant had made the attack; that he had struck the complainant on the jaw with his fist, and to other facts, from which the jury might have concluded that at least one of the knives found at the scene of the encounter belonged to the complainant and not to the defendants, especially since it was conceded that neither of the knives, when found, had any traces of blood.

The trial judge also charged the jury that " all the witnesses have put a knife upon each one of these defendants, and you have *the* knives produced at the station house and brought here." He did not tell the jury that there was an issue of fact as to whether *the* knives produced in court had been used by the defendants. If the defendant's testimony was believed, the jury could have found that at least one of those knives belonged to the complainant, dropped by him before he had an opportunity to use it. Therefore, if the court deemed it necessary to discuss the question of the ownership of the knives, it should at least have referred to the issue as a contested one and suggested to the jury the possibility that one of " the knives " was the knife which Flessas testified the complainant had dropped, because, if it was, then the jury might well have accepted Flessas' version of the occurrence as correct.

The court was likewise in error in its statement that each of the witnesses for the People " is an entire stranger to everybody in the

transaction." One of the witnesses to whom the court referred was Weinberg, whose testimony, to say the least, was highly improbable. Weinberg testified that he happened to witness the alleged assault, but that although acquainted with the complainant for at least six weeks before, he had not communicated with him until about three weeks later and at no time had he communicated with the police. Although I recognize that the jury had the right to believe this improbable story, how could it be said that this witness was " an entire stranger to everybody in the transaction."

Enough has been said to show that in the charge every inference favorable to the People was drawn, while the contentions of the defendants were either weakened or ignored. Their evidence was belittled and discredited. The testimony of the witnesses for the People was submitted to the jury as fact and with the intimation that their deliberations need not take very long. The cumulative effect of all of this, coupled with the erroneous exclusion of evidence to which reference has been made, could not fail seriously to prejudice their case. I concur in almost everything contained in the opinion of Mr. Justice MARTIN defining the duty of the trial judge in the trial of a criminal case, and for that reason I am unable to concur in his conclusion. For, whatever we may say by way of admonition, the effect of our decision is that a defendant is not entitled to impartial consideration of the facts by the jury if, upon the evidence, we believe him to be guilty. It is precisely in this respect that the trial judge exceeded his authority, and yet by this affirmance we confirm the very doctrine which we desire to repress. I must be permitted to decline. If the defendants did not have a fair trial I do not perceive upon what theory the judgments of conviction can be affirmed. As the court said in *People* v. *Marendi* (213 N. Y. 600, 619): "Are we then to disregard errors no matter how substantial, if upon a review of the evidence we are satisfied with the verdict of the jury? Such a course will simply mean in the long run the abolishing of all forms of law taught by experience to be necessary to the protection of the innocent and the decision of criminal cases on appeal solely on the facts."

Undoubtedly we may disregard many technical errors, provided always we are satisfied that, in the main, a defendant has been fairly tried. Such a trial these defendants were entitled to, but such they did not have. For these reasons the judgments should be reversed and a new trial ordered.

O'MALLEY, J., concurs.

Judgment affirmed.