UNITED STATES, Appellee

v.

ALPHONSO RHODEN, Private, U. S. Army, Appellant

1 USCMA 193, 2 CMR 99

194

No. 153

Decided February 26, 1952

1ST LT. Bernard Landman, Jr., USA, for Appellant.
MAJ. Augustus A. Marchetti, USA, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Private Alphonso Rhoden was tried by general court-martial and found guilty of three offenses. They were (1) behaving with disrespect toward a superior officer, (2) willfully disobeying a lawful command of a superior officer, and (3) committing an assault with intent to do bodily harm by striking another soldier on the head with a dangerous weapon. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for six years. The findings and sentence were approved by the reviewing authority, and the board of review in the office of The Judge Advocate General of the Army affirmed. The accused petitioned this Court to review the record of his conviction, and we granted the petition, limiting the scope of our review to the following issues: (1) Whether the accused was denied representation by counsel during the pretrial investigation; and (2) whether the instructions of the law officer on the elements of the offenses set out in the specifications of Charges II and III were misleading and prejudicial. We first dispose of the question of

whether petitioner was denied counsel during the pre-trial investigation and then proceed to the second issue.

## I

Article of War 46(b), 10 USC § 1517, in effect at the time of the pre-trial investigation in this case, provides, in part, as follows:

> "The accused shall be permitted, upon his request, to be represented at such investigation by counsel of his own selection, civil counsel if he so provides, or military if such counsel be reasonably available, otherwise by counsel appointed by the officer exercising general courts-martial jurisdiction over the command."

Counsel for accused concede that under Article 32, Uniform Code of Military Justice, 50 USC § 603, and the ruling of the United States Supreme Court in the case of Humphrey v. Smith (1949) 336 US 695, 93 L ed 986, 69 S Ct 830, the provisions of Article of War 46(b), supra, are not jurisdictional; but they assert that the failure to comply with the requirements of those provisions was prejudicial to the substantial rights of the accused and that this Court may reverse for prejudicial error without regard to whether it touches jurisdiction.

We are in agreement with the contention concerning our right to review; but we find in the record ██ affirmative evidence that ██ the accused waived his right to have counsel present at the investigation. This is a right which may be waived (Paragraph 34c, Manual for Courts-Martial, United States, 1951), and since it is, the accused is precluded from asserting such an assignment in this Court unless we can detect serious error clearly prejudicial. Such is not the case here.

The investigating officer's report shows that at the outset of the investigation accused was advised of his right to have civilian counsel, military counsel of his own selection, or military counsel appointed by the convening authority represent him at the investigation. While an entry made in response to a printed instruction in the investigation report seems to be slightly confusing, when consideration is given to all the entries affecting the right to have counsel present it is apparent that accused had requested a certain named officer to represent him in his defense; that, after being informed of his right to have that officer present at the pretrial investigation, he affirmatively indicated he did not desire this counsel present at that time.

The Article of War quoted above founds the right on the request of the accused and where, as here, he has been fully and adequately informed of his right and he has elected not to exercise it, then we need not pursue the matter further, at least, as previously indicated, in the absence of any showing in the record of prejudice.

## II

We turn now to the more substantial issues presented by this case.

The Uniform Code of Military Justice has forced military courts to adopt, in part, the civilian practice of instructing on criminal cases; and this opens up an extremely important, but difficult, field of law. We are cognizant of the problems encountered in criminal prosecutions, and are aware of the responsibility imposed on law members of general courts-martial and presidents of special courts-martial, particularly those located in areas which do not have access to legal publications and reported cases. In addition, we must consider the necessity of giving instructions in the light of the fact that the Act no longer permits the law officer of a general court-martial to sit with members of the court in considering the findings of guilty and guide them in determining the essential elements of the offense.

With the hope that we can carve out principles which will afford maximum protection to the accused, and at the same time not unduly burden the government in its prosecution of the guilty, we shall set out two basic principles governing instructions, and thereafter deal with the specific problems in this case.

196

The first principle involves the duty of the law member to instruct on the essential elements of the ▮▮▮ offense. Article 51(c) of the Uniform Code of Military Justice, 50 USC § 626 provides in part:

"Before a vote is taken on the findings, the law officer of a general court-martial and the president of a special court-martial shall, in the presence of the accused and counsel, instruct the court *as to the elements of the offense* and charge the court. . . ." (Italics supplied).

Paragraph 73a, Manual for Courts-Martial, United States, 1951, amplifies the Code by providing (p 112):

"After closing arguments have been concluded *the law officer (president of a special court-martial) will instruct the court as to the elements of each offense charged.* Information as to the elements of an offense may be obtained from the subparagraphs entitled 'Discussion' and 'Proof' which appear in the discussion of the punitive article under which the offense is charged. . . . The instruction may be given in the language of the applicable subparagraph. If there is any doubt as to the elements of a particular offense, the law officer (president of a special court-martial) may call upon the trial counsel to produce any law available on the matter, including information or instructions on the law from the convening authority." (Emphasis supplied).

In the case of United States v. Lucas, (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951, we held the provisions of Article 51(c), supra, mandatory and that failure to follow the mandate as required by that section was error as a matter of law. In that case, however, we concluded that the error was not prejudicial because the accused had entered, and persisted in, a plea of guilty. In the case of United States v. Clay, (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951, the issue of failure to instruct was squarely before us in a case wherein a plea of not guilty had been entered. There we stated:

"It was for Congress to set the rules governing military trials. It legislated on the subject and not without adequate consideration. We are not concerned with the wisdom of the enactment, but we might suggest that there are many reasons which may have prompted Congress to demand that instructions be given to members of courts-martial. It is reasonable to require that members trying an accused should not be permitted to deliberate upon the guilt of an accused without having been told the nature of the crime and the essential elements of the offense. It is necessary and desirable that the law be explained to them, that the law officer or president point out the issues involved, and that someone with authority and knowledge of the law bring into focus the relationship of the evidence to those issues. Unless the court is in some way limited as to what are the essential elements, the members become unguided and unconfined. What evidence might be considered by them as relevant to establish the crime may be outside the limits of the charge and the material evidence influencing them might have no reasonable relationship to the elements of the offense."

While in the Clay case, supra, we did not specifically deal with only the failure to instruct on the essential elements of the offense charged, the previously quoted language of the Act specifically states this must be done, and the rationale of that case required that we follow the express wording of the Act in this case. Even though this rule may be interpreted to include all offenses alleged, we reserve for future disposition detailed consideration of the principles concerning included offenses.

The second principle for determination is whether the accused waives the mandatory requirement of ▮▮▮ the Act by failure either to submit requested instruction or except to the failure to give instructions. On page 731, 23 CJS, the following statement is found:

"As a general rule, whether requested or not, the court should in-

struct on every essential question in the case so as properly to advise the jury of the issues, and a statute so providing has been held mandatory."

This principle has been discussed. in numerous federal cases. In Screws v. United States, 325 US 91, 89 L ed 1495, 64 S Ct 1031, Mr. Justice Douglas, speaking for the court, stated:

"It is true that no exception was taken to the trial court's charge. Normally we would under those circumstances not take note of the error. See Johnson v. United States, 318 US 189, 200. But there are exceptions to that rule, United States v. Atkinson, 297 US 157, 160; Clyatt v. United States, 197 US 207, 221–222. And where the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it is necessary to take note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial. Whatever the degree of guilt, those charged with a federal crime are entitled to be tried by the standards of guilt which Congress has prescribed."

In Kinard v. United States (1938), 96 F2d 522, Judge Miller of the United States Court of Appeals for the District of Columbia, stated:

"As to some essential questions of law, it is the duty of the trial court to instruct the jury, whether requested to do so or not. As to other questions there is no such duty, and failure to instruct—in the absence of a request therefor—does not constitute error. The rule applicable to the present case was well stated in Kreiner v. United States, 2 Cir, 11 F2d 722, 731, certiorari denied 271 US 688, 70 L ed 1152, 46 S Ct 639:

" 'In a criminal case a court should instruct on all essential questions of law involved in the case, whether requested or not. People v. Odell, 230 NY 481, 130 NE 619; Commonwealth v. Ferko, 269 Pa 39, 112 A 38; Pearson v. State, 143 Tenn 385, 226 SW 538; Duroff v. Commonwealth, 192 Ky 31, 232 SW 47; State v. Lackey, 230 Mo 707, 132 SW 602.' "

198

In George v. United States (1942), 125 F2d 559, the United States Court of Appeals for the District of Columbia, speaking through Judge Stephens, stated:

"Except upon essential principles of law concerning which it is the duty of the trial judge to instruct the jury whether requested or not, there is no duty to instruct in the absence of a request. Kinard v. United States, 1938, 68 App DC 250, 96 F2d 522."

In discussing the question of waiver by failure to request, or by failure to except, we go no further than do the federal circuit courts of appeal and intentionally limit this discussion to the failure of the court to instruct on the essential elements of the offenses alleged and embraced within the evidence. Clarification of instructions given, theories of the parties, specific points developed through the evidence, and special defenses may be controlled by a different rule. The Manual for Courts-Martial, United States, 1951, Paragraph 73c provides as follows:

"The law officer is not required to give the court any instructions other than those required by Article 51c (73a, b.). However, when he deems it necessary or desirable, he *may* give the court such additional instructions as will assist it in making its findings." (Italics supplied).

### III

This Court, in granting review in this case, limited the issues to the instructions concerning only two offenses and the crux of the problem before us is whether the instructions were inadequate, misleading or prejudicial. We shall treat the two specifications and applicable instructions separately.

The pertinent part of the specification under Charge II, reads as follows:

"In that [the accused] having received a lawful command ▮▮▮▮▮ from 1st Lt. John H. Stopyro, his superior officer to stop talking and sit down did . . . *willfully*, disobey the same." (Italics supplied).

The instruction on this specification, as given by the law officer to the members of the court-martial, is as follows:

"The court is advised that the elements of the offense are . . . That the accused received a lawful command from a certain officer and that the accused failed to obey said command from his superior officer."

Counsel for the accused contends that the instruction as given allowed the court-martial members to find accused guilty of the offense as charged, without finding that he "willfully" disobeyed the order, and that any failure to obey, with or without justifiable reason, would under the instruction compel a finding of guilty of the specification. Stated differently, the contention resolves itself into an assertion that the instruction as given stated the elements of an included offense of failure to obey, but that a finding was returned which found the accused guilty of the more heinous offense of willful disobedience. We are in substantial agreement with this assertion.

In discussing Article of War 64, 10 USC § 1536, the Manual for Courts-Martial, U. S. Army, 1949, Paragraph 152 (in effect at the time this offense was committed), gives the following explanation in describing the greater offense:

"The willful disobedience contemplated is such as shows an *intentional* defiance of authority, as when a soldier is given an order by an officer to do or cease doing a particular thing at once and refuses or deliberately omits to do what is ordered." (Italics supplied).

The lesser included offense of failure to obey is defined in the same paragraph in the following language:

"A neglect to comply with an order through heedlessness, remissness, or forgetfulness is an offense chargeable under Article 96."

Under "Proof" the Manual lists the following elements for the offense of willful disobedience (page 206):

"(a) That the accused received a certain command from a certain officer as alleged; (b) that such officer was the superior officer of the accused; and (c) that the accused willfully disobeyed the command."

The variance between the specification alleged, the instruction given, and the finding made is readily apparent. Under the specification, the accused was charged with having "willfully" disobeyed the order of his superior officer. The manual prescribes that such disobedience must be accomplished with an "intentional defiance of authority." However, in deliberating upon the finding to be made upon this particular charge, the members of the court-martial were permitted to find the accused guilty for mere failure to obey, even though "intentional defiance of authority" or "willfullness" was a necessary element of the offense. Thus, the instruction did not set out all of the elements included in the greater offense; it only enumerated those necessary for the included offense. That this was prejudicial to the accused must be assumed for the reason that the greater offense, under Executive Order 10149, August 8, 1950, carries no limit as to sentence where the offense occurs in the Far East Command, while the maximum for the lesser is six months.

The instruction given to define the offense alleged in the specification under Charge III, must also be held to be incomplete and prejudicial. The specification reads as follows:

"In that [the accused did] with intent to do bodily harm commit an assault upon Private Joseph Robinson by striking him on the head with a dangerous weapon, to wit: a carbine rifle."

The only instruction given to define the elements of the crime alleged was as hereinafter quoted:

"That the accused did commit an assault upon a certain person as alleged and that said assault was with the intent to do bodily harm."

The Manual for Courts-Martial, U. S. Army, 1949, lists three different types of assault which come within the confines of the allegation and the evi-

dence in support thereof. We have purposely omitted simple assault proscribed by Article of War 96, 10 USC § 1568, for evidentiary reasons. The first, and most serious offense of the three, is laid under Article of War 93, 10 USC § 1565 which defines the crime as "assault with intent to do bodily harm with a dangerous weapon, instrument or other thing." Conviction of this offense carries a maximum sentence of five years confinement. Also necessarily defined under Article of War 93, supra, is the included offense of "assault with intent to do bodily harm" which carries a penalty of one year imprisonment. The third type of assault is defined by Article of War 96, supra, as "assault with a dangerous weapon." Conviction under this article carries a maximum penalty of three years imprisonment.

In the instant case, the specification is laid under a charge of violation of the 93rd Article of War, supra. The specification is worded to charge the more serious of the two assaults proscribed by that Article, yet the instruction specifies only the elements necessary to convict of the included offense. The Manual for Courts-Martial, U. S. Army, 1949, (p 248) states with respect to the aggravated assault that "bodily harm" means great bodily harm and not that of a minor nature. It also states that weapons are dangerous when they are used in such a manner that they are likely to produce death or great bodily harm. But, the mere fact that they are susceptible of so being used is not enough. Therefore, under this article two of the principal elements of the aggravated crime are (1) the use of a dangerous weapon, and (2) its use in a manner likely to produce death or great bodily harm.

The evidence does not disclose the force of the blow struck or the nature and extent of the injury suffered by the soldier assaulted; and, while it might permit the members of the court-martial to infer the accused used a dangerous weapon with intent to produce great bodily harm or death, there is no instruction requiring that they find this specific intent, or that they find the carbine as used was a dangerous weapon, in order to find the accused

guilty of the aggravated offense. Under the instruction given they could find an intent to do less than seriously injure or kill the victim and yet return a verdict of guilty of the more serious offense. Such being the case, we are again confronted with a situation in which an instruction was given setting forth the elements of the included offense and a finding of guilty of the greater.

It is contended by the government that the inclusion of the words "as alleged" cures the defect in the instruction. While this might have some merit under certain factual situations, it is not persuasive in the background of this case for the reason that the assault alleged included all gradations of the offense. When that situation exists reference to the specification is of little help as it does not furnish a guide to differentiate between the degrees of the crime. Moreover, there are inconsistencies between the specification and the instruction and we need go no further than to state it is not possible for this Court to determine whether the court-martial looked to the instruction or the specification for guidance. Proper procedure would require they follow the former and disregard the latter.

Another contention posed is that the evidence was sufficient to support the greater offense, and therefore, there was no prejudice flowing from failure to give proper instructions. It is not for us to determine what the court members would have found had they been properly advised on the elements. It is sufficient to show prejudice, that in arriving at the findings there was a reasonable possibility they were misled by erroneous instructions. The duty was theirs to determine whether or not the evidence was sufficient to prove each and every element beyond reasonable doubt and we can not make the finding for them, nor can we surmise or speculate on what they would have determined under appropriate instructions. The accused is not required to convince us that the error did influence the finding of guilty. In support of this principle

we choose the following language from the case of Little v. United States (1934) 73 F2d 861. There the Circuit Court of Appeals, 10th Circuit, stated as follows (at p 866):

"But where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict."

Our holding on the two previous issues requires that the action of the board of review be reversed. While the finding and sentence on the specification set forth under Charge I is sustained, the maximum punishment for that offense is confinement for not more than six months. Accordingly, that conviction alone would not support the sentence as rendered in the instant case.

The holding of the board of review is reversed, and the record returned to The Judge Advocate General of the Army for such action as is consistent with this opinion.

Chief Judge QUINN and Judge BROSMAN concur.