■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEX SHAW, Appellant.—Judgment, Supreme Court, New York County, rendered April 10, 1975, convicting defendant following a jury trial of murder in the second degree and felonious possession of a weapon and sentencing him to concurrent terms of 15 years to life and a maximum of 7 years, modified, on the law and as a matter of discretion in the interest of justice, to the extent of reversing the conviction for murder in the second degree and remanding for a new trial as to that charge, and otherwise affirmed. The evidence clearly established that the defendant fired a shot that struck the deceased in the abdomen resulting in his death. The aberrational behavior of the defendant in connection with this incident clearly raised a very substantial issue as to his state of mind at the time, whether he intended to fire the shot at all, and if so, whether he intended to kill the deceased. In this context, an illustration used by the trial court in his charge on intent may inadvertently have had a prejudicial impact on the jury's determination of the issue. Towards the end of this section of the charge, the Trial Judge said: "If I were to hold a gun to someone's head and shoot at his head, it would probably kill him. And you would be quite justified in inferring that that is just exactly what I intended." Although this illustration might well be

unobjectionable in other cases, we doubt that it was appropriately employed in this case. Given what seems to us the substantial character of the issue of intent raised by the very peculiar conduct of the defendant disclosed by all the testimony, we have concluded that the interest of justice requires a new trial with regard to the homicide charge. Concur—Kupferman, J. P., and Sandler, J.; Fein, J., concurs in a memorandum and Evans and Lynch, JJ., dissent in a memorandum by Evans, J., as follows: Fein, J. (concurring). I concur in the result reached by the majority in reversing the judgment convicting defendant of·murder in the second degree and remanding for a new trial. I agree that the illustration which the trial court used in its instructions to the jury may have had a prejudicial effect under the facts and circumstances here presented. The court carefully delineated the elements of the crimes of murder, manslaughter in the first degree, manslaughter in the second degree and criminally negligent homicide. However, only with respect to murder did the court use an illustration, an illustration with respect to intent which was pointedly close to the facts in the case. The use of this particular illustration, in discussing the requisite intent to kill, on the charge of murder in the second degree, in the absence of appropriate illustrations as to intent to commit the lesser crimes, unduly emphasized the evidence demonstrating the requisite intent for murder in the second degree. Evans, J. (dissenting). Alex Shaw, on February 9, 1974, went into a billiard parlor and played pool. Two boys, one the deceased, were playing pool at another table. Defendant told the two boys that he wanted that table and, upon being told that they were gambling, he drew a revolver and ordered them against the wall and accused one of them of having robbed him (there was police testimony that he had been beaten and robbed three weeks earlier). The deceased, Harry Weathers, denied the accusation and started to walk away from the wall, whereupon defendant fired, striking him in the abdomen, then turned and fired at the other boy. Defendant was then expelled by the manager. He left, followed by one Lawrence Terry. When they ascertained that Weathers had been shot, one patron went to get an ambulance, another called for an ambulance and the owner telephoned the police. Outside, a police car had just turned into the block; the defendant stopped the car and told the officers that one of the men who had robbed him was in the poolroom. Within seconds one of the patrons approached the car and reported a shooting in the poolroom. The police went to the poolroom where they found Weathers lying on the floor. In response to a query, he indicated that he didn't know who shot him. Minutes after the police arrived the defendant entered the poolroom. In response to a shout that he was the one who had shot Weathers, defendant shouted that he had indeed shot Weathers. Officer McKenna arrested defendant and read him his rights. Defendant then shouted his reason for shooting Weathers— Weathers' participation when he was robbed—and he wished for Weathers' demise. Defendant, *inter alia,* argues on appeal that his conviction should be reversed and a new trial ordered because the trial court's charge on specific intent in an intentional murder was prejudicial and not related to the facts in the case, and that it was a strong suggestion to the jury to find intent, and that by distorting the facts the court invaded· the jury's province. The defendant does not argue the sufficiency of the evidence; thus the only issue raised on this appeal is whether the trial court's charge was prejudicial or misleading. The court's charge as to specific intent was as follows: "Now, if you find the defendant caused the death, the intention with which he did it is, of course, of critical importance. Intention to cause death, intention to cause serious physical injury. How do you know what intention a man has?

It's not, you know, something that there's a big sign up about. Although, indeed, the District Attorney says there almost was a sign here. But he says that the defendant came in shouting what his intention was, or at least his hope. Intention is a subjective matter. You judge it the same as you do in life, generally. You judge it from surrounding circumstances, from what a man does. If I were to shoot a gun at someone, you are to have a right to infer that I had some intention, probably not a friendly one. And so the same here. If I were to shoot a gun at someone and hit him, it's very likely that I would hurt him or kill him. And that is a natural and probable consequence of such an act. And because it is, it is a matter of common sense if you intentionally do something, the natural and probable consequence of which is a certain effect, well, that's probably what you intended, that is probably the effect you intended. If I were to hold a gun to someone's head and shoot at his head, it would probably kill him. And you would be quite justified in inferring that that is just exactly what I intended. A person is presumed to intend the natural and probable consequences of his conduct." The example did not differ greatly from the facts of the case. There was ample evidence of the fact that the victim was shot in the abdomen, and the jury was well aware of the location of the wound. Quite often the trial court will give an example in its charge to highlight and illustrate the meaning of certain aspects of the charge. "The trial judge should not as a rule limit himself [to stating the law]. Jurors need not legal definitions merely. They require proper instructions as to the method of analyzing such definitions after reaching their conclusions on the facts." *(People v Odell,* 230 NY 481, 488.) It would appear then that the Court of Appeals has given us a clear mandate to avoid the sterile, and an example is one method of aiding this analysis; an example, that must necessarily avoid the precise facts in the case while at the same time having some relationship. A fair reading of the court's charge does not lead one to the belief that the trial court directed or intended to direct a verdict. It would not be at all wise to sustain every challenge to an example given in a charge when it is clearly either a *reductio ad absurdum* or an exaggeration. I cannot, therefore, find that such an example was sufficient to usurp the jury's function or otherwise tread upon their prerogatives, or that it was prejudicial to the defendant. At various points in his charge the court was careful to review for the jury the defendant's evidence as well as the People's evidence, particularly referring to Shaw's possible intoxication and his irrational behavior. The court also referred to the defendant's evidence on the issue of intent as follows: "The defendant has taken the stand here and has given his version of the facts. And he doesn't dispute that he had a loaded gun. He says that he was showing it to another man in Clarke's Pool Room when somebody jogged him or grabbed him and the gun went off. *He says that he had no intention to hurt anybody and that he had no intention to hurt or kill Harry Weathers.* Indeed, implicit in Mr. Shaw's testimony is that he had nothing against Harry Weathers". It does not appear then that the charge impinged upon the jury's freedom of decision or compelled a finding that the shooting was an intentional act (see *People v Hommel,* 41 NY2d 427). The judgment should be affirmed.