UNITED STATES, Appellant

v.

WOODROW EMERSON, Commissaryman Seaman, U. S.
Naval Reserve, Appellee

1 USCMA 43, 1 CMR 43

MAJ. Charles H. LeClaire, USMC, for Appellant.
CDR. Robert H. McCarthy, USN, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This case is before us on Certificate for Review by the Judge Advocate General of the Navy in accordance with Article 67(b)(2) of the Uniform Code of Military Justice (Act of May 5, 1950, 64 Stat 108; 50 U.S.C. §§ 551–736). Accused was tried under UCMJ on June 26, 1951, by special court-martial on two separate charges of absence without leave. Since the issues before the court relate to the specifications under these charges, they have been set out in full in the margin.[1] Having been found guilty of all charges and specifications, the accused was sentenced to a bad conduct discharge and loss of pay amounting to $300.00. The con-

vening authority and supervisory authority approved but the former reduced the loss of pay to $100.00. The board of review, on September 4, 1951, set aside the findings and sentence and ordered a new trial on the following grounds: (1) the specification under the first charge was faulty in that it did not allege termination of absence and return to naval jurisdiction; (2) the case was referred for trial to one special court-martial but actually tried by another, thus depriving the latter of jurisdiction.[2] The correctness of these rulings are certified to this court for review.

We consider first the question of jurisdiction below. The record discloses

---

[1] Charge 1: Violation of the Articles for The Government of The Navy—Unauthorized Absence.

Specification: In that Woodrow Emerson, 835 16 62, a commissaryman seaman, U. S. Naval Reserve, attached to the U. S. Naval Receiving Station, Naval Base, Norfolk, Virginia, having, while so serving on active duty on board said station been granted leave of absence from his station and duty on board said station, to which he had been regularly assigned, said leave to expire at 8:00 a.m., May 14, 1951, did fail to return to his station and duty as aforesaid upon the expiration of said leave, and did remain absent from the U. S. Naval service, without leave from proper authority, for a period of about sixteen days and sixteen hours, at the expiration of which time the Articles for the Government of the Navy were

revised and replaced by the Uniform Code of Military Justice.

Charge II: Violation of the Uniform Code of Military Justice, Article 86.

Specification: In that Woodrow Emerson, commissaryman seaman, U. S. Naval Reserve, U. S. Naval Receiving Station, Naval Base, Norfolk, Virginia, having, on or about 14 May 1951, absented himself without leave from proper authority, from his station and duty at aforesaid receiving station and from the U. S. Naval service, did, on or about 31 May 1951, without leave from proper authority, remain absent from his unit, to wit: the U. S. Naval Receiving Station, located at Norfolk, Virginia, and did remain so absent until on or about 2 June 1951.

[2] United States v. Woodrow Emerson, CNSN, U.S.N.R., 3–51–S–202, decided 4 September 1951.

that the convening authority, on June 14, 1951, referred the ▪ charges for trial to a special court-martial appointed by "my serial LO 126" of March 31, 1951. On June 26, 1951, the accused was tried by a special court-martial appointed by the convening authority in his serial LO 149 dated June 25, 1951. The appointing order of this latter court did not contain authorization for trial of unarraigned cases ordered tried before a previously appointed court. The board of review decided that this lack of specific and correct referral for trial deprived the special court-martial of jurisdiction.

Trial having commenced after May 31, 1951, the procedural provisions of the Uniform Code of Military Justice are applicable and binding. There is, however, no specific mention of referral for trial in the Code.[3] Manual for Courts-Martial, United States, 1951, provides in Chapter 7 for the disposition of charges. Paragraph 33(j) reads:

"(1) Charges are *ordinarily* referred to a court-martial for trial by means of the endorsement on page 3 of the charge sheet." (Italics supplied)

The same paragraph provides further that if it is desired to refer charges to a different court than that to which they were originally referred, the new reference is "customarily" accomplished by a new endorsement on the charge sheet. The use of the words "ordinarily" and "customarily" leads us to the conclusion that the language is not mandatory and would permit, for instance, an oral referral for trial.

The board of review was undoubtedly motivated in its decision by previous Navy cases which have held that trial by court-martial other than that to which the charges were originally referred deprives the court of jurisdiction.[4] Although the sections of Naval Courts and Boards, 1937, upon which these decisions are based are remarkably similar to the corresponding provisions of the Army manuals in effect prior to May 31, 1951,[5] the Army cases reach a contrary conclusion—that the error does not constitute a jurisdictional defect.[6] In Legal and Legislative Basis, Manual for Courts-Martial, 1951, it is stated at pages 10 and 11 that the drafters of the 1951 Manual, with full knowledge of the opposing Navy decisions, intended to adopt the Army rule.

It is generally true that military courts-martial must be convened strictly in accordance with the statute, but the pertinent law here does not expressly require formal referral of charges. A failure to follow the procedure set out in the Manual for customary usage does not, in our opinion, constitute a defect of sufficient import to deprive the court of jurisdiction. Our conclusion is buttressed by the fact that no objection was raised at the trial here and there is no showing that this formal defect in any way affected the substantial rights of the accused.[7]

Having decided that the court had jurisdiction in this case, we proceed to

---

[3] Article 30 (b) provides as follows: "Upon the preferring of charges, the proper authority shall take immediate steps to determine what disposition should be made thereof in the interest of justice and discipline . . ."
[Presumably, "disposition" would include referral for trial, but formulation of the precise procedural steps for referral were logically left to the services.]

[4] CMO 3, 1944, page 468, states the prevailing Navy view.

[5] N.C.&B. 1937, sec. 327; MCM, U. S. Army, 1949, par. 34 g; MCM, U. S. Army, 1928, par. 34.

[6] Casey, 3 B. R. 159, 163 (1932); Anderson, 1 CMR 442 (1949); Brandon, 19 B. R. 193 (1943).

[7] In United States ex rel. Hartley v. Malanophy, 81 F. Supp. 316 (1948 DC NY), a similar allegation as to lack of court-martial jurisdiction was found to be without basis by the federal district court, which held that a failure to object to trial before a court other than that to which the charges were originally referred constituted in law a waiver of the defect. To the same effect is Legal and Legislative Basis, Manual for Courts-Martial, 1951, p. 11.

the questions relative to the charges and specifications. The ■ specification under the first charge alleges absence over leave from May 14, 1951, for a period of about 16 days and 16 hours. Since this charge was laid under AGN 8, it follows that its validity must be tested under the Articles for the Government of the Navy and Naval Courts and Boards, 1937.[8] The board of review held this specification invalid because of the failure to allege the date and manner of return to naval jurisdiction. We think these departures from the usual form of alleging unauthorized absences are not fatal.

It has been the universal Navy rule that the time and manner of return are, in essence, immaterial to the offense of absence without leave.[9] These are matters going only to the gravity of the offense. The essential element is that the accused did, on a certain date, unauthorizedly absent himself from the naval service. This being done, the offense has been completed. A different view would compel the conclusion that absence without leave is a continuing offense, committed anew on each day of absence. This theory has been properly rejected by all the services.[10] It is undeniable that the specification here is not in the most desirable form, even though it does contain the necessary elements. The phrase, "at the expiration of which time the Articles for the Government of the Navy were revised and replaced by the Uniform Code of Military Justice," although improper, is surplusage only. The accused was fully apprised of the offense with which he was charged and was given ample information upon which to prepare his defense. The specification is sufficiently definite to be pleaded in bar at a subsequent trial for the same offense. The departure from the usual form cannot be said to have prejudiced the accused. We hold, therefore, that the board of review was in error in holding that the specification under Charge I did not properly allege an offense under AGN 8.

A reading of the two specifications under which accused was convicted together with the proof adduced at the trial reveals that the accused was absent over leave from May 14, 1951, until June 2, 1951. This period of absence, single and uninterrupted, was made the basis of two charges, the first already discussed under AGN 8 and the second alleging absence without leave under UCMJ, Article 86. It follows from the discussion in relation to the specification under Charge I that the specification under Charge II cannot stand regardless of its form. The offense having been consummated on the date of original absence, and this not being a continuing offense, it could not be made the basis for a conviction on two charges of absence without leave. This would be an improper multiplication of charges arising out of one illegal act. The finding of guilty on the specification under Charge II must be set aside.

Where, as here, the offense in question was committed prior to May 31, 1951, but trial was had after that date, the sentence could be no greater than that authorized by the Manual for Courts-Martial, United States, 1951.[11] The Table of Maximum Punishment in the 1951 Manual would permit the imposition of a bad conduct discharge for this offense only if the court properly considered record of two previous convictions. Appellate defense counsel argues that allowing proof of previous convictions occurring before the effective date of the new Code is to give *ex post facto* effect to its provisions. With

---

[8] Executive Order 10214 promulgating the Manual for Courts-Martial, United States, 1951; and UCMJ, 1950. Section 4.

[9] CMO 9–1925, p. 15; CMO 8–1924, p. 3; CMO 1–1940, p. 15; CMO 1–1944, p. 3.

[10] MCM, U. S. Army, 1928, par. 67; MCM, U. S. Army, 1949, par 67. The rule has been adopted in the 1951 Manual: MCM 1951, par 68c.

[11] Executive Order 10214 of 8 February 1951. See United States v. Dart, AFCJA–23/3, ACM 4177, 1 CMR 710, for complete discussion on this point.

this argument we cannot agree. The defense view would impel the conclusion that Congress intended to grant all members of the service a clean record as to previous convictions as of the effective date of the new Code. This is inconsistent with the rule that convictions occurring during a three-year period prior to commission of the present offense may be introduced in evidence. MCM, 1951, par 75 (b) (2). The punishment here imposed would clearly have been legal under AGN and NC&B, 1937, there being no maximum specified for absence without leave. This being so, we cannot say that the accused has, in any way, been harmed.

The finding of guilty as to the specification under Charge I and the sentence of the court is approved. The finding of guilty under the specification of Charge II is set aside as being incorrect in law. So much of the opinion of the board of review as is contrary to the decision herein is reversed.

Judges LATIMER and BROSMAN concur.