UNITED STATES, Appellee

v.

LESLIE HARJO, Constructionman, U. S. Navy, Appellant

2 USCMA 9, 6 CMR 9

No. 585

Decided October 3, 1952

CDR. Raymond W. Glasgow, USN, for Appellant.
CAPT. Wesley C. Blake, USMC, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was charged and arraigned on a specification alleging desertion from his place of duty, to wit, United States Naval Construction Battalion, Port Hueneme, California, from January 6, 1951, to August 27, 1951, in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. During the course of the trial[1] a question was raised by the president of the court-martial as to the propriety of charging an offense as being in violation of a provision of the Code when it occurred prior to May 31, 1951, its effective date. After a consultation between the law officer, trial counsel and defense counsel, it was concluded that the charge should be amended to state the crime as a violation of Article 8, Subsection 21, Articles for the Government of the Navy, 34 USC § 1200, which was in effect at the time the crime was allegedly committed.

After a hearing on the merits, the accused was found guilty of the offense as charged and sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, reduction to the rating of construction recruit, and confinement at hard labor for one year and six months. The convening authority in reviewing the record held that the specification did not state an offense of desertion under the Articles for the Government of the Navy, supra, but did sufficiently allege the crime of absence without authority from a place of duty (conduct to the prejudice of good order and discipline), a lesser included offense. He thereupon approved a finding of guilty of the included offense but affirmed only so much of the sentence as provided for a bad-conduct discharge, forfeiture of all pay and allowances, reduction to the grade of construction recruit and confinement at hard labor for fourteen months. A board of review in the office of The Judge Advocate General of the Navy, one member dissenting, found the evidence sufficient to sustain the conviction of the lesser included offense. However, in conformity with our holding in United States v. Emerson (No. 77), 1 USCMA 43, 1 CMR 43, decided November 14, 1951, that the punishment was limited by the maximum set by the new Code, the board affirmed all portions of the sentence, except the confinement, which it reduced to six months. The Judge Advocate General of the Navy, pursuant to Article 67(b) (2) of the Code, 50 USC § 654, certified the record to this Court to have us determine the question of whether the evidence was sufficient, as a matter of law, to support the findings of guilty.

The Government, to establish its case, offered in evidence copies of three written official documents. The finding must be supported by those as they alone reflect on the elements of the offense. The first was a photostatic copy of Standard Transfer Order No. 2272–50, which was issued on December 20, 1950, by the United States Naval Receiving Station, San Francisco, California, directing the accused to proceed and report to NAVCBCEN, Port Hueneme, California, not later than January 5, 1951. The second was a photostatic copy of the personnel diary of the Construction Battalion Center, Port Hueneme, California, for the dates January 5, 1951, to January 7, 1951, inclusive. The third, an administrative entry, is shown on a Navy form which is identified as Pers–82–85, NAV Per. 601. This entry consists of a statement that the accused was apprehended by civil authorities in Wewoka, Oklahoma, on August 26, 1951, wearing civilian clothes.

Counsel for the accused contends in this Court, and the dissenting member of the board of review was convinced, that the standard transfer order shows on its face that it was not received by the accused and, therefore, he is not chargeable with knowledge of his change of station. In view of our holding that there is not sufficient evidence to establish other elements of the of-

[1] 5–51–G–393.

fense, we need not reach that question. We shall, for the purposes of this opinion, assume regularity in the execution and delivery of the order and conclude its contents were known to and understood by the accused.

There are two elements with which we must concern ourselves: the unauthorized absence and the date of its inception. We encountered no difficulty in holding that absence was established. The accused was a constructionman in the United States Navy, and, unless on authorized leave or pass, was required to perform his duties at one of two Naval installations, both on the west coast. Laying aside for the moment knowledge of the standard transfer order, the accused should have been present at either the United States Naval Receiving Station, San Francisco, California, or the Naval Construction Battalion Center, Port Hueneme, California. The administrative entry showing his apprehension by civil authorities in Wewoka, Oklahoma, in civilian clothes, many hundreds of miles away, on August 26, 1951, shows that he was not present on that date at either of the two named installations. Whether the evidence shows this absence to be without authority, we will discuss later.

The Bureau of Naval Personnel Manual, Section C–7802(3)(a) provides that a person who straggles or deserts while en route to the next Naval activity to which ordered to report is considered attached to that activity. Assuming knowledge of the order, the accused, having been ordered to report to the Naval Construction Battalion Center, Port Hueneme, California, on or before the 5th day of January 1951, would be considered as attached to that Center on that date unless he reported earlier. In either event, the specification alleged absence from the proper station. The difficulty we encounter is in finding sufficient evidence to sustain a finding as to when he commenced his alleged unauthorized leave. To support its contention that he did not report in accordance with orders and was, therefore, absent without authority, the Government introduced into evidence what is designated as Prosecution Exhibit 2, which purports to be the personnel diary of the Construction Battalion. As we read this exhibit it is a diary which shows only changes in personnel from day to day. It does not purport to be a roster of all personnel present with, absent from, or otherwise carried on the rolls of the unit. If we, therefore, accept the exhibit at face value, it shows merely that the accused did not report to the Battalion Center on January 5, 6 or 7, 1951. It does not show that the accused did not report prior or subsequent to those dates. His standard transfer order required that he report not later than midnight on January 5, 1951, and this does not require his appearance on that particular date. For aught that appears he could have reported earlier, as is done by many members of the armed services, and, if so, his name would not appear on the exhibit because the fact of his reporting would be in the diary for the appropriate date. Assuming that he presented himself on the 3d or 4th of January 1951, his change of status would be reflected on either of those dates and not on the dates included in the exhibit. Assuming further that he had reported on January 8, 1951, there would be no entry on the 5th, 6th or 7th. Under those circumstances he would only have been absent over leave for three days. It may be, that once it has been established that an accused was absent without authority, it might be presumed that that status continued; however, here we find no starting point. An entry merely showing apprehension by civilian authorities cannot supply that information. Moreover, the pages of the diary do not furnish evidence that the absence was without authority. A supposititious situation will disclose the hiatus in the chain of circumstances necessary to establish that element. If we assume the accused reported on the 3d of January 1951, remained with the battalion center, was granted leave on August 20, 1951, was apprehended by civil authorities on the date shown in the exhibit and detained to verify his duty station, there would be no offense of absence without authority. In stating those facts we make no assumption which would conflict with the contents

**11**

of the exhibits. Moreover, if we went so far as to hold that the ▮ administrative entry showing apprehension could be used as a basis for inferring absence without leave, we would still be faced with the question, when did it commence? In view of the fact that the sentence in this type of offense is dependent upon the length of absence, we cannot find any support for the present sentence or for a holding that accused was absent for 233 days.

We answer the question by holding that there is not sufficient evidence in the record to sustain the findings. The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Navy for further action not inconsistent with the views expressed in this opinion.

Chief Judge QUINN and Judge BROSMAN concur.