UNITED STATES, Appellee

v

RONALD D. GARNER, Private E–2, U. S. Army, Appellant

7 USCMA 578, 23 CMR 42

No. 8655

Decided February 15, 1957

*First Lieutenant Bert M. Gross* argued the cause for Appellant, Accused. With him on the brief was *Major Edwin Doran.*

*First Lieutenant William K. Davenport* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, First Lieutenant Lewis W. Evans,* and *First Lieutenant John E. Riecker.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of larceny and unauthorized absence, in violation of Articles 121 and 86, respectively, of the Uniform Code of Military Justice, 10 USC §§ 921 and 886. Intermediate appellate authorities affirmed. We granted review to consider whether the law officer erred in excluding certain evidence offered by the accused.

The specification under Article 86 alleged an unauthorized absence from November 1 to December 1, 1955. In his plea, the accused attempted to plead guilty to an absence from November 1 to November 23, 1955. The plea was rejected by the law officer as "irregular," and a plea of not guilty was entered for the accused. The prosecution introduced extract copies of the morning reports of the accused's organization. These show that the accused absented himself without authority on November 1, 1955; that he was apprehended by civilian authorities on November 23; and that he came under military control on December 1. As part of its case, the defense offered a deposition by Deputy Sheriff W. L. Brewer, Maryville, Tennessee. Trial counsel objected to its admission on the ground that it was immaterial to the issues. His objection was sustained. It is this ruling which is now before us.

According to the deposition testimony, Sheriff Brewer received a completed Department of Defense Form 553 which requested the apprehension of the accused as an unauthorized ab-

580

sentee. Acting on the request, he took the accused into custody on November 23 and confined him in the Blount County jail. Immediately thereafter he telephoned the "Army authorities" at Fort McPherson, Georgia. He was informed that the "military police would arrive within a few days to remove the accused." On December 1 the accused was turned over to the military police.

Essentially, the question before us is whether Sheriff Brewer's testimony is relevant to the period of the accused's absence. The accused contends that the sheriff acted as an agent for the military in effecting his apprehension and that, as a result, his absence terminated on November 23. Conversely, the Government maintains that an unauthorized absence does not end until the absentee is in the actual physical custody of a member of the military forces. Both the Government and the accused rely upon a number of service rulings and decisions to support their respective contentions. See United States v Crocker, SF NCM 56–00904, July 27, 1956, 22 CMR —; United States v Mayer [CGCM 9761], 4 CMR 505; United States v Bovee [ACMS–999], 3 CMR (AF) 807. We need not attempt a synthesis of these authorities. Nor need we consider the purported effect of Army Regulations on the accused's pay and allowances because, as we said in United States v Coates, 2 USCMA 625, 629, 10 CMR 123, "whatever may be the duration of an absence for the purposes of the Bureau of Supplies and Accounts, the Bureau's view is hardly conclusive of the question when raised in a punitive proceeding."

In Kurtz v Moffitt, 115 US 487, 505, 29 L ed 458, 6 S Ct 148 (1885), the United States Supreme Court held that "a peace officer or a private citizen has no authority as such, and without the order or direction of a military officer, to arrest or detain" military personnel for a violation of military law. Some years later the Congress conferred authority upon civil officers "to summarily arrest a deserter" and deliver him to the military authorities. Act of October 1, 1890, § 2, 26 Stat 648. In substantially the same language, the statute has been re-enacted as Article 8 of the Uniform Code, 10 USC § 808.

The accused vigorously contends that a civil officer acting in pursuance of this authority acts as an agent of the military. With equal vigor the Government maintains that a return to military control is not accomplished until the accused is physically in the hands of the military. If we were to accept the Government's argument we would be compelled to conclude that the accused could be incarcerated for an indefinite and extended period without any possible relief. In other words, his release from confinement in the civilian jail would depend upon the whim of an administrative official. Confinement under such circumstances borders too closely on a denial of due process to be seriously considered. In any event, it is contrary to Congressional intent.

Congress has directed that there be no "unnecessary delay" in the disposition of a court-martial case. It has provided, for example, that if an accused is held for trial by a general court-martial and is in arrest or confinement, the charges should be referred to the general court-martial authorities within eight days of the imposition of restraint. Article 33, Uniform Code of Military Justice, 10 USC § 833. It has also provided that it is an offense against the Uniform Code to cause any "unnecessary delay" in the disposition of a case. Article 98, 10 USC § 898. It would do violence to these provisions to sanction a rule which permits a contrary result. Therefore, we reject the Government's argument that only actual physical control over the accused in a situation like that present terminates the accused's absence and liability to punishment for that absence. See Manual for Courts-Martial, United States, 1951, paragraph 127c, Section A.

A second possible solution is that the military has a *reasonable* time after notification of the accused's apprehension within which to take control over him. The difficulty with applying this rule here is that the military's continued inaction must be construed as

**581**

"constructive authorization" for the accused's continued absence. In a number of cases, however, we have pointed out that the military's failure to pick up an unauthorized absentee, even though it knows of his whereabouts, does not change an unauthorized absence status into an authorized one, United States v Ferretti, 1 USCMA 323, 3 CMR 57; United States v Korzeniewski, 7 USCMA 314, 22 CMR 104. We must thus look to other principles.

Military control can be exercised directly by military personnel, or, for certain purposes, indirectly, by civilian officials acting for and on behalf of the Armed Forces, Reid v Covert, 351 US 487, 100 L ed 1352, 76 S Ct 880 (1956), rehearing granted on another ground 352 US 813, 1 L ed 2d 92, 77 S Ct 123. When the military authorities issued an apprehension order they, in effect, asked the civil authorities to detain the accused for them. A detention effected in accordance with such a notice is a detention on behalf of the military and under the authority granted by Congress for that purpose. In our opinion, it constitutes military control over the absentee for the purpose of terminating his absence. In fact, it would appear that resistance to the apprehension or escape from the custody of the civil authority is a violation of the Uniform Code, Article 95, 10 USC § 895. As the Judicial Council noted in United States v Henderson [ACM 1979], 2 CMR(AF) 390, 394, the military authorities cannot in such a situation "postpone, or preclude, an absentee's return to military control by failing or refusing to take affirmative measures to control his person." We conclude, therefore, that the law officer erred in excluding the deposition.

The findings of guilty of the unauthorized absence charge are set aside. The record of trial is returned to The Judge Advocate General of the United States Army for submission to a board of review. In its discretion the board of review may either order a rehearing on the unauthorized absence charge or affirm findings of guilty of an unauthorized absence of twenty-three days, as shown by the evidence, and reassess the sentence upon the basis of the approved findings of guilty of that offense and the larceny.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

It seems to me that the only sound and workable rule in cases of this sort is one which gives the military a reasonable time after notification of the accused's apprehension within which to take control over him. It is fictional, indeed, to say, as does the Court's opinion, that the unauthorized absence ends the minute the military service requires a civilian law enforcement officer to hold the absentee until duly authorized personnel arrive to take him into custody. When notified of the apprehension, the Service could hardly tell the custodian to release the man. Neither can it sacrifice other essential functions to gather up absentees.

In this case, Sheriff Brewer apprehended the accused at the request of the military and notified authorities at Fort McPherson, Georgia, that he had done so. Accused's home station was Fort Carson, Colorado, which was some 1,500 miles from the place of apprehension. No doubt the sheriff talked to the Provost Marshal at Fort McPherson, or his representative, but that place was approximately 200 miles from where accused was incarcerated. Thereafter, it was necessary for the appropriate section at the latter headquarters to verify accused's identity and status with his parent unit, select guards to take custody of him, cut orders authorizing their necessary travel, and dispatch them on their journey. The journey itself might vary in specific instances, but here it involved a round trip of at least 400 miles and a journey over that distance would consume a substantial period of time. All of the matters I have referred to would cause delay, and all are chargeable to the accused, not to the Government. Its obligation is only to use reasonable efforts to reclaim its personnel. Hence the proper rule is one which counts all *necessary and reason-*

582

*able* delay after notification as part of the unauthorized absence.

A clear distinction can be drawn between this case and cases like United States v Ferretti, 1 USCMA 323, 3 CMR 57, and United States v Korzeniewski, 7 USCMA 314, 22 CMR 104, which say that the military's failure to pick up an absentee, even though it knows of his whereabouts, does not change an unauthorized absence into an authorized one. A member of the military establishment has a positive duty to remain with his unit if he has not been granted leave or assigned special duty of some sort. That duty persists, day by day, even though he absents himself without leave, and the absentee has a free choice, each day, to return to military control or remain absent. However, the obligation rests on him to return, not upon the Government to seek him out. Hence the fact that the Government knows of the whereabouts of an unauthorized absentee will not serve to terminate the absence. In this case, however, the accused was arrested as a military offender. Thereafter, he no longer had the option of returning to his home station, or Fort McPherson, Georgia, or any other military installation, and thus terminating his absence. He could only wait until he was picked up. Hence he is only chargeable with the length of absence occasioned by his delict, which includes the time reasonably required by the military to take control of him.

Now for my reasons for joining the majority in part. The question of what amounts to a reasonable time for the military to take control of an absentee must depend upon the facts of each case,

and is a factual matter to be resolved by the court-martial under proper instructions. To that end, defense counsel is entitled to establish the date upon which the accused was acutally apprehended, the reason for apprehension, and the date when military authorities were notified. It would also be material to ascertain whether the civilian apprehending authority notified the accused's proper station, or merely the nearest military authority. In this case, Sheriff Brewer's deposition was the source of much of this information. It thereby became material, and the law officer's ruling of exclusion was both erroneous and prejudicial, for the dispute as to the length of the unauthorized absence had a direct bearing upon the sentence which could be adjudged. However, I do not believe we should dismiss the charge of unauthorized absence altogether. The accused did not dispute but what he was absent without leave for the period November 1, 1955, to November 23, 1955. The evidence is ample as to that time period and the court-martial found at least that absence. If we were to permit the board of review to reduce the length of absence to twenty-three days, the accused will receive all that he seeks and justice would be done to the Government as well. Accordingly, I would permit the board to order a rehearing as to the charge of absence without leave, or affirm as to unauthorized absence for twenty-three days and the larceny charge, and redetermine sentence appropriateness upon those findings.