UNITED STATES, Appellant

v

RAY A. LYNCH, Private U. S. Army, Appellee

Captain *Charles W. Turnbaugh* argued the cause for Appellant, United States. With him on the brief were Lieutenant Colonel *Ronald M. Holdaway,* Major *Thomas P. Burns, III,* and Captain *Richard L. Menson.*

Captain *Peter J. Kenney* argued the cause for Appellee, Accused. With him on the brief were Colonel *Arnold I. Melnick* and Major *Franklin D. Arness.*

## OPINION OF THE COURT

QUINN, Judge:

The Army Court of Military Review set aside the accused's conviction for unauthorized absence and dismissed the charge on the ground that he had previously been tried for, and acquitted of, the same offense. The Judge Advocate General certified the case to this Court to review the correctness of that decision.

In February 1971, the accused, described as a member of Special Processing Detachment, Headquarters Command, U. S. Army Field Artillery Center and Fort Sill, was arraigned before a general court-martial, composed of a military judge without court members, on a specification, laid under Article 86, Uniform Code of Military Justice, 10 USC § 886, alleging that without authority, he absented himself from his organization, Special Processing Company, Special Troops, U. S. Army Training Center Engineer and Fort Leonard Wood "on or about 7 November 1969 . . . and did remain so absent until on or about 7 January 1971." Although evidence in the form of an extract copy of a morning report from Special Processing Company at Fort Leonard Wood indicated that the accused had left that unit without authority on November 7, 1969, the trial judge found the accused not guilty of the specification and charge.

Within a week of his acquittal, the

accused was again charged with an unauthorized absence. This specification alleged that he absented himself from the Special Processing Detachment at Fort Sill for the period from November 27, 1969, to January 7, 1971. The charge and specification were referred to trial before a special court-martial. When the case came on for hearing, defense counsel moved to dismiss the charge and its specification on the ground that the alleged absence was the same as that of which the accused had been previously acquitted by the general court-martial. The trial judge denied the motion because the offense of unauthorized absence is not "a continuing one." Trial proceeded to conviction, and the accused was sentenced to a bad-conduct discharge and partial forfeiture of pay for six months.

With one exception, the evidence in both cases was the same. At the first trial, the Government's case consisted of extracts from morning report entries of Special Processing Company at Fort Leonard Wood and of Special Processing Detachment at Fort Sill. The former indicated the accused was AWOL from the Company on November 7, 1969; the material part of the Detachment's morning report entries reads as follows:

Rtn Jd 18 8 HQ USAFACFS this sta 7Jan71 (surr mil auth this sta 7Jan71 rtn mil con this sta 7Jan71 cnf this sta 7Jan71 pndg CM) RNA this sta.

In defense, the accused introduced an extract from another morning report of the Detachment at Fort Sill. The pertinent part is as follows:

Atch Pres VOCG Ft Sill OK 24Nov69 App civ auth 7Nov69 Huntsville AR rtn mil con 24Nov69 Ft Sill OK rstr this sta 24Nov69 pndg DO.

On the introduction of the defense exhibit, trial counsel claimed surprise and requested a recess "to consider these developments" and determine the Government's course of action. The request was granted. When court reconvened, trial counsel indicated he had "no rebuttal." Citing several cases,[1] defense counsel argued that the entry as to accused's apprehension by civilian authority could be construed as indicating action on behalf of the military sufficient to effect a return to military control as of November 7, 1969. [2] Trial counsel then represented that in "light of the evidence," the Government could not "oppose a finding of not guilty . . . of an absence without leave on 7 November 1969." Thereupon, the trial judge announced that he found the accused "Of the Charge and Specification: Not guilty." At the second trial, the only new evidence was an extract of a November 27, 1969, redistribution AWOL entry in the morning reports of the Detachment at Fort Sill. That entry is as follows:

| CH | | ABS | | 27Nov69 |
| to | AWOL | 2200 | hrs | 27Nov69 |

At trial and before the Court of Military Review, the Government contended that the second prosecution was not for the same offense as the first because the original specification alleged an absence on November 7, 1969, from Special Processing Company at Fort Leonard Wood, while the second specification set out an absence originating on November 27, 1969, at Special Processing Detachment, Fort Sill. Unauthorized absence, the Government argued, is not a continuing offense in the sense that it is not, as we said in the first term of Court, "committed anew on each day of absence," but is complete the moment the accused absents himself without authority. United States v Emerson, 1 USCMA 43, 46, 1 CMR 43, 46 (1951). From that standpoint, two different offenses were apparently alleged in the two specifications.

The date of inception of the alleged absence in each specification is not the same; and the unit from which the accused allegedly absented himself is different. However, the protection against double prosecution does not rest upon a surface comparison of the allegations of the charges; it also involves consideration of whether there is a substantial relationship between the wrongdoing asserted in the one charge with the misconduct alleged in the other. United States v Mitchell, 7 USCMA 238, 22 CMR 28 (1956). Relying on *Mitchell,* the Court of Military Review concluded that the difference in unit was not significant because the circumstances under which the accused joined the Special Processing Detachment at Fort Sill made him subject to prosecution by either that organization or his assigned unit, Special Processing Company at Fort Leonard Wood. The court disregarded the difference in the date of alleged inception of unauthorized absence because it concluded that the alleged absence from November 27, 1969, to January 7, 1971, was a lesser period of absence "contained within the original charge."

We agree in large part with the Court of Military Review's analysis of the facts and its conclusion of law. Consequently, we could safely predicate an affirmative answer to the certified question upon the court's opinion. However, the Government's insistence that the court's decision is "inconsistent" with our iterated pronouncement that "absence without leave is not a continuing offense," see United States v Reeder, 22 USCMA 11, 46 CMR 11 (1972), impels a separate statement.

---

[1] United States v Loper, 25 CMR 778 (AFBR 1957); United States v Jackson, 1 USCMA 199, 2 CMR 96 (1952); and United States v Garner, 7 USCMA 578, 23 CMR 42 (1957).

[2] Neither trial counsel nor the trial judge disputed defense counsel's argument. See United States v Rodgers, 8 USCMA 664, 25 CMR 168 (1958); United States v Garner, supra. The validity of the argument was questioned, but not decided, by the Court of Military Review.

■ A continuing offense has been defined as "a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." Armour Packing Co. v United States, 153 F 1, 5–6 (8th Cir. 1907), aff'd, 209 US 56 (1908), cited with approval in United States v Midstate Horticultural Company, 306 U.S. 161, 166 (1939). A continuing offense, said the Supreme Court of North Carolina, is one that is committed "day by day." State v Johnson, 212 NC 566, 194 SE 319, 322 (1937). Unlike such offenses as murder, in which the essential elements conjoin to complete the wrong in one span of time and no other, the continuing offense has duration. A typical example is the maintaining of a public nuisance. To the extent that an unauthorized absence "is complete" the moment the accused leaves his unit without authority, it is not a continuing offense. United States v Emerson, supra. For that reason, the statute of limitations begins to run against the offense at the moment of the inception of the absence, not its termination. United States v Busbin, 7 USCMA 661, 23 CMR 125 (1957). Yet, time is crucial to an unauthorized absence in at least two ways.

■ First, the length of an unauthorized absence is the essential element in determining the legal punishment for the offense. United States v Lovell, 7 USCMA 445, 22 CMR 235 (1956). Under the Table of Maximum Punishments, depending upon the duration of the absence,[3] one of three maximums applies. Secondly, an unauthorized absence that is "single and uninterrupted" cannot be fragmented into two or more separate periods, with each part made separately punishable. United States v Emerson, supra at 46, 1 CMR at 46. Curiously, the Government is silent about its understanding of the consequences of these aspects of the offense had the accused

been convicted, as charged, at the first trial and sentenced to the maximum punishment for what it now presents as an absence of less than 30 days. One wonders whether it would have argued that the verdict and sentence were erroneous because the absence did not endure from November 7, 1969, to January 7, 1971, but only from November 7 to November 26, 1969. We need not, however, speculate as to the Government's position. We do not doubt that had the accused been convicted at the first trial, as charged, he would have been protected against the second prosecution.

■ Protection against successive prosecution for the same offense includes protection against double punishment. United States v Modesett, 9 USCMA 152, 25 CMR 414 (1958). One cannot be prosecuted and punished for an act which is "part and parcel" of an offense for which he was previously convicted and punished. United States v Maynazarian, 12 USCMA 484, 485, 31 CMR 70, 71 (1961).

■ No circumstances have been posited by the Government, and our imagination has not produced any, under which an accused can absent himself without authority, when he is already an unauthorized absentee. In other words, it is inconceivable to us that an unauthorized absentee can during his absence become an unauthorized absentee again, so as to be separately punishable for the ongoing absence and the "second" absence. By reason of the hierarchical nature of a military command, an individual's absence from his assigned unit will also constitute him an absentee from superior organizations in the same command or his armed force. United States v Jack, 7 USCMA 235, 22 CMR 25 (1956); United States v Arisio, 16 CMR 367 (NBR 1954). As a result, the accused's immediate unit or the superior organization can prosecute the accused

---

[3] An absence of 3 or fewer days authorizes a maximum penalty of confinement at hard labor for 1 month and forfeiture of two-thirds pay for the same period; absence for more than 3 days and not more than 30 days carries a penalty of confinement at hard labor for 6 months and forfeiture of two-thirds pay per

month for the same period; absence in excess of 30 days authorizes dishonorable discharge, confinement at hard labor for 1 year, and forfeiture of all pay and allowances. Manual for Courts-Martial, 1969 (Rev.), paragraph 127c, Section A, Table of Maximum Punishments.

for unauthorized absence. *Jack* and *Arisio* leave no doubt that prosecution by one will bar prosecution by the other for the same absence. Similarly, under service regulations, an individual assigned to one unit but detailed to a different unit can be prosecuted for an unauthorized absence by either organization. It can happen that each will file a charge for the same absence, but the accused cannot be subjected to two prosecutions and two punishments. United States v Mitchell, supra. It is clear, therefore, had the accused been convicted, as charged, he could not again be prosecuted for an absence of the same or lesser duration by his organization, or a superior command, or by a unit to which he had been joined. What is true in event of conviction is equally true when the accused is acquitted.

■ Possibly, the Government's present evidence is correct, and, in fact, there was not, as alleged in the original specification, a "single and uninterrupted" absence from November 7, 1969, to January 7, 1971, but rather there were two absences during that period. The Government's right to assert that contention at the second trial was considered, but not decided, by the Court of Military Review. The findings of not guilty of the charge and specification before the court-martial absolved the accused of criminal responsibility as to any matter included in the specification, whether or not there was evidence of guilt in the record. As a minimum, the findings of not guilty absolved the accused of liability for an unauthorized absence on November 7, 1969; they also absolved him of liability for an unauthorized absence on January 7, 1971, the alleged date of return to military control. On the averments in the specification, the court-martial could have found the accused guilty of an unauthorized absence starting later than November 7, 1969, and ending earlier than January 7, 1971. United States v Harris, 21 USCMA 590, 45 CMR 364 (1972). Since the court-martial did not find any such absence, its findings of not guilty must be taken to include absolution of criminal responsibility for any lesser absence included in the period of absence charged. The Government had a full opportunity to prove, if it could, that the accused had initiated such an absence, but it presented no evidence. Under the doctrine of *res judicata,* it cannot escape the effects of the verdict against it, to relitigate the factual issues embraced within the first specification.

We answer in the affirmative the certified question which asks whether the Court of Military Review "was correct in ruling that the doctrine of former jeopardy precluded the accused from being tried for an unauthorized absence commencing on 27 November 1969 and terminating on 7 January 1971," and we affirm the court's decision.

Chief Judge DARDEN and Judge DUNCAN concur.