UNITED STATES, Appellee

v

GLEN W. LANPHEAR, JR., Private First Class, U. S. Army,
Appellant

No. 28,696

March 7, 1975

*Captain Jack Seaman* argued the cause for Appellant, Accused. With him
on the brief were *Colonel Victor A. DeFiori* and *Captain Leland M. Ste-
nehjem, Jr.*

*Lieutenant Colonel Donald W. Hansen* argued the cause for Appellee,
United States. With him on the brief were *Lieutenant Colonel Ronald M.
Holdaway* and *Captain David A. Schlueter.*

### OPINION OF THE COURT

FERGUSON, Senior Judge:

This appellant stands convicted by a
general court-martial convened at Fort
Lewis, Washington, of an unauthorized
absence from December 1, 1969, to Janu-
ary 26, 1973, in violation of Article 86,
Uniform Code of Military Justice, 10
USC § 886. In his trial conducted before

a military judge sitting alone, the appellant was sentenced to a bad-conduct discharge, confinement at hard labor for 4 months and accessory punishments. That sentence was approved by the convening authority and, following summary affirmance by the United States Army Court of Military Review, we granted the appellant's petition for review to consider the following issue:

Whether the appellant's unauthorized absence was terminated on 12 January 1970 when civilian authorities notified military authorities of the appellant's apprehension and thereafter held appellant for the military.

At trial below, the prosecution introduced without objection two exhibits consisting of appropriate morning report entries which reflected the inception date and the termination date of the appellant's absence as alleged. During its case in chief, the defense also introduced without objection several defense exhibits, the most pertinent of which for the purposes of this appeal was a stipulation of fact. That stipulation established that the appellant was arrested on January 12, 1970, by the Grover City, California, police on a charge of contributing to the delinquency of a minor. It further provided:

During his being transported to the city police station, the accused volunteered the information that he was AWOL from the US Army to SGT Hallum of the Grover City Police. SGT Hallum of the department called the military police at Fort Ord, California, informing them of the accused's status and that he would be detained in the San Luis Obispo County Jail.

It is normally the procedure in such cases to release the individual to the military authorities. Otherwise, the individual is detained until his civilian charge is resolved. In this case, the accused was detained in civilian confinement, since no military authorities did appear to pick him up.

The appellant also testified in his own behalf on the merits and related that his absence began on December 1, 1969, when he failed to return from leave. PFC Lanphear explained that he had unsuccessfully attempted to catch an airplane from his home in South Dakota to his duty station at Fort Lewis, Washington, on that date. Consequently, he later decided to drive to Oakland, California, with some friends and turn himself in at Fort Ord.

Acknowledging that he was subsequently apprehended by the Grover City police on January 12, 1970, the appellant testified that he showed the police his military identification card and informed them he was absent without leave. According to the appellant, the police then called the Fort Ord military police and informed them of his status. The appellant further testified that the civilian police then informed him that the military police would pick him up in 3 to 4 days.

In a subsequent search of the appellant's automobile, the police discovered the diary of a friend and companion which contained an entry reflecting that the appellant had stolen gasoline in another California town. The appellant was thereafter transferred to nearby San Luis Obispo for confinement because Grover City had no facilities in which to hold him. Five days later, the appellant was moved to Bakersfield, California, to stand trial for the theft of the gasoline. That trial resulted in a 30-day sentence to the Kern County Road Camp.

The remainder of the appellant's testimony, which dealt with his activities during the remaining portion of his extended absence, was not pertinent to the issue at hand. Suffice it to note at this point that at no time during this period of post-trial incarceration or subsequent serving of the sentence, according to the appellant, did the military authorities make any attempt to take him into custody or otherwise hold him on detainer after being notified of his availability.

The question thus raised and presented by these facts is whether, as a matter of law, PFC Lanphear's absence terminated on January 12, 1970, when he made his military status and absence known to the civilian authorities and they, in turn, informed the military authorities of his apprehension and immediate availability. Particularly in view of the stipulation of fact here introduced

and received, the resolution of this issue is not simply dependent upon any mere determination of credibility as possibly made by the trial judge below. With both the prosecution and the defense bound by the stipulated facts so put into evidence, that stipulation must now serve as the basis for evaluating the instant assignment. *United States v Gerlach,* 16 USCMA 383, 37 CMR 3 (1966); paragraph 154*b,* Manual for Courts-Martial, United States, 1969 (Rev.).

■ Any period of unauthorized absence is terminated by a "return to *military control." United States v Coates,* 2 USCMA 625, 630, 10 CMR 123, 128 (1953); *United States v Jackson,* 1 USCMA 190, 2 CMR 96 (1952). In discussing what is meant by the term "return to military control" so as to terminate an unauthorized absence in those situations in which an absentee is taken into civilian custody, paragraph 164*a* of the Manual provides:

> When an absentee is taken into custody by civilian authorities at the request of the military authorities, the absence is terminated at that time. When an absentee is in the hands of civilian authorities for other reasons and these authorities make him available for return to military control, the absence is terminated when the military authorities are advised of his availability.

Although this provision is only a matter of substance, which was added to the Manual under its latest revision, it is based upon the cases of *United States v Garner,* 7 USCMA 578, 23 CMR 42 (1957) and *United States v Webster,* 27 CMR 956 (AFBR 1958).[1]

In *United States v Garner, supra,* we held that when an unauthorized absentee is apprehended by civilian authorities who are acting for and on behalf of the armed forces, the absence is terminated at that time. Our finding that such apprehension operated to constructively return the absentee to military control was predicated on our belief that[2]

the military authorities cannot in such a situation "postpone, or preclude, an absentee's return to military control by failing or refusing to take affirmative measures to control his person."

Relying on this language in *United States v Webster, supra,* the Air Force Board of Review concluded that the same result should obtain in those instances where military authorities were advised by civilian officials that an armed forces absentee is in their custody because of an alleged civilian offense but that they were immediately willing to surrender him to military custody. In such a situation, the Air Force Board of Review held that the absence was terminated at the moment the military authorities were notified to that effect.

■ In so holding, the Air Force Board of Review apparently distinguished those situations where an absentee may simply seek to assert the defense of physical inability to return due to an apprehension by civilian authorities for a civilian offense from those in which it is additionally shown that the civilian authorities had indicated a willingness to surrender immediately the absentee to military authorities. In the former situation, where the absentee's own misconduct is the sole factor giving rise to his continued civilian detention, his physical inability to return cannot be used as a defense because such inability cannot be occasioned by his own willful act. *United States v Myhre,* 9 USCMA 32, 25 CMR 294 (1958). In the latter situation, however, it is rather the failure or refusal of the military authorities to take affirmative measures once notified that an absentee is immediately available to be taken into custody that otherwise operates constructively to terminate the absence.

With that crucial distinction in mind, the *Webster* decision is but a logically compelling extension of our holding in *United States v Garner, supra.* As in the case where an absentee is apprehended by civilian authorities acting for and on behalf of the armed forces, we perceive

---

[1] Department of the Army Pamphlet No. 27-2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Rev.), at 28-4 (1970).

[2] United States v Garner, 7 USCMA at 582, 23 CMR at 46.

no valid reason why the military authorities should be allowed to disavow an absentee's return to military control under circumstances which indicate that they have been notified of the absentee's status and the fact that he is immediately available to be taken into their custody.

In the case at bar, the stipulation clearly established that the civilian authorities, once having arrested the appellant for a civilian offense, informed the military of his status. The stipulation also reflects that, in cases such as this, the normal procedure was to release the arrested military person to military authorities. Since no military authorities appeared to pick up this appellant, however, the stipulation further recites that he was detained in confinement until the civilian charge was resolved.

█ As we view the record of the instant proceedings, there is nothing to indicate that the normal procedure was not followed in this case. Consideration of the stipulation as a whole, moreover, convinces us that the normal procedure was indeed followed. This is so because the stipulation clearly discloses not only that the military authorities were informed of the appellant's "status," but that they also later failed to pick him up. As such, the stipulated facts of this case clearly imply that the appellant was made immediately available to be surrendered to military custody but that the military failed or refused to assume such custody. We thus hold that the appellant's absence was terminated on January 12, 1970, when the military authorities were initially so informed of his immediate availability.

Only so much of the findings of guilty as finds the appellant guilty of an unauthorized absence from December 1, 1969, to January 12, 1970, is accordingly affirmed. The record of trial is ordered returned to the Judge Advocate General of the Army for submission to the Court of Military Review for a reassessment of the sentence.

Judge COOK concurs.

Judge QUINN did not participate in the decision of this case.