UNITED STATES, Appellee,

v.

Dannie L. DUBRY, Machinist's Mate Second Class, U. S. Navy, Appellant.

No. 39,297.

NCM 80 0225.

U. S. Court of Military Appeals.

Oct. 26, 1981.

For Appellant: *Lieutenant Henry J. Howard*, JAGC, USNR (argued); *Lieutenant Kerry T. Davidson*, JAGC, USN (on brief); *Lieutenant Lynn M. Maynard*, JAGC, USNR.

For Appellee: *Lieutenant William C. Martucci*, JAGC, USNR (argued); *Commander T. C. Watson, Jr.*, JAGC, USN (on brief).

Opinion of the Court

FLETCHER, Judge:

At his special court-martial[1] appellant was convicted of one specification of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. His guilty pleas at trial were to a period of absence extending from February 21, 1978, until May 19, 1978. Notwithstanding his pleas to this lesser period, he was found guilty of a period of unauthorized absence extending to June 6, 1979, the time of his apprehension in a town at some distance from his duty station. We granted review (9 M.J. 398, N.C.M.R.) to consider whether the evidence supports the findings of guilty. We conclude that it does.

Assigned to a naval unit in Charleston, South Carolina, appellant was at his home in Missouri when his authorized leave expired on February 21, 1978. As a result of an altercation with his wife, a civilian warrant was issued for his arrest on felony charges. At this time, appellant proceeded to Arkansas where he worked for three weeks. When an Arkansas police check revealed an outstanding warrant in Missouri,

---

1. Although charged with two specifications of unauthorized absence, appellant was convicted of only one offense, while the other was dismissed on motion. He was sentenced to a bad-conduct discharge, confinement at hard labor for 2 months and reduction to the pay grade of E–1. The convening authority approved the discharge and reduction, but changed the confinement to 45 days' hard labor without confinement.

appellant was apprehended and then incarcerated in various civilian jails in Arkansas. Upon the advice of the commanding officer of a local reserve center, appellant waived extradition and a month and one-half later he was returned to Missouri.

Appellant was unable to get bond in Missouri since he had been placed on military hold because of his unauthorized absence. He contacted the Naval Reserve Unit in Joplin, Missouri. Chief Petty Officer Saunders and Yeoman First Class Mitchell visited appellant in jail around May 18, 1978, when appellant requested that the government hold be released. This was accomplished by Yeoman First Class Mitchell with approval from the Bureau of Navy Personnel. Sometime between May 19, 1978, and May 25, 1978, the hold was released; appellant made bond; and he was set free. However, the bondsman informed appellant that under the agreement of bond appellant could not leave the state without seeking the permission of the judge.

Appellant contends that, while released on bond, he went to the reserve center, after calling several times, and requested to be attached to the center pending disposition of his civilian charges. He informed personnel of the reserve center of the conditions of his bond. He also said he called his ship or unit in South Carolina. Chief Petty Officer Saunders did not recall if appellant ever visited the center, but he did remember that appellant had been told to come by to fill out some papers which would be needed to request temporary attachment to the center. By stipulation Yeoman First Class Wagner, of the Naval Reserve Center in Joplin, Missouri, testified that he thought he remembered advising appellant who had come to the center. Appellant's brother corroborated this visit.

In December 1978, appellant went to trial on the civilian charges. Represented by a public defender, he entered a plea of guilty to a misdemeanor offense, and was placed on six months' probation. After this trial, appellant telephoned the reserve center and notified them of the results of his trial. He did not go in person to the reserve center nor did he inform its personnel that he was ready to go back to his command. Appellant then returned to his civilian job which he held from his release on bail to his later arrest.

Several times during the period of bail and once during the probation period, appellant telephoned the center to apprise Navy personnel of the status of his case. At no time after his visit to the center while on bond did he present himself and surrender to military authorities. Appellant was arrested on June 6, 1979, in Carthage, Missouri.

The critical question we are called upon to answer in this case is when was appellant's unauthorized absence terminated. Paragraph 165, Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

A member of the armed forces turned over to the civil authorities upon request under Article 14 is not absent without leave while held by them under that delivery. *Also, when a member of the armed forces, being absent with leave, or absent without leave, is held, tried, and acquitted by civil authorities, his status as absent with leave, or absent without leave, is not thereby changed, however long he may be held. If a member of the armed forces is convicted by the civil authorities, the fact that he was arrested, held, and tried does not excuse any unauthorized absence. The status of absence without leave is not changed by an inability to return through sickness, lack of transportation facilities, or other disabilities.* But the fact that all or part of a period of unauthorized absence was in a sense enforced or involuntary should be given due weight when considering the type of court to which the case should be referred, or, in the event of conviction, the punishment to be imposed. When, however, a man on authorized leave is unable to return at the expiration thereof through no fault of his own, he has not committed the offense of absence without leave, there being an excuse for the absence in such a case.

(Emphasis added.) It is perfectly clear that prior to bail, appellant's discussions with the military seeking a release of the military hold did not terminate his unauthorized absence as he was still being held by civilian authorities. However, after the appellant was released on bond, he went to the reserve center and spoke with military authorities who did not apprehend him. *See United States v. Kitchen*, 5 U.S.C.M.A. 541, 18 C.M.R. 165 (1955). There, the reserve center personnel are active duty military with power to apprehend under Article 7, UCMJ, 10 U.S.C. § 807, and appellant submitted himself to this power and control. *Cf. United States v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972). However, he was still *out on bond* so his submission to military control was *not complete*.[2] *Cf. United States v. Raymo*, 1 M.J. 31 (C.M.A. 1975). After his civilian trial and during the resultant probation, appellant never surrendered himself in person to military authorities. His unauthorized absence cannot be regarded as either terminated or excused during any of these periods. *See* para. 165, Manual, *supra.* The appellant is not allowed to use this conflict of jurisdictions to reduce his military criminal liability. Thus, the evidence supports the finding of guilty, and the decision of the United States Navy Court of Military Review is affirmed.

Judge COOK concurs.

EVERETT, Chief Judge (dissenting):

At his trial appellant testified that after his extradition from Arkansas to Missouri —an extradition to which he had consented after being advised to do so by naval personnel—he could not obtain release from his pretrial confinement by civilian authorities because of a "military hold" due to his unauthorized absence status. This testimony was corroborated by the stipulated testimony of others and by a Prisoner's Jail Record (Defense Exhibit A).[1]

In paragraph 164a of the Manual for Courts-Martial, United States, 1969 (Revised edition), under a discussion of "Absence without authority (Absence without leave)," this rule is stated:

> When an absentee is taken into custody by civilian authorities at the request of the military authorities, the absence is terminated at that time. *When an absentee is in the hands of civilian authorities for other reasons and these authorities make him available for return to military control, the absence is terminated when the military authorities are advised of his availability.*

(Emphasis added). As explained by Judge Ferguson (Judge Cook concurring) in *United States v. Lanphear*, 23 U.S.C.M.A. 338, 340, 49 C.M.R. 742, 744 (1975), this provision, "which was added to the Manual under its latest revision ... is based upon the cases of *United States v. Garner*, 7 U.S.C.M.A. 578, 23 C.M.R. 42 (1957), and *United States v. Webster*, 27 C.M.R. 956 (A.F.B.R. 1958)." I conclude that under the undisputed evidence appellant is entitled to the benefit of this rule. He originally was in the hands of civilian authorities for reasons other than his status of unauthorized absence; but then these authorities made him available for return to military control. The military authorities were well aware of his availability, because they specifically consented to the removal of the "military hold" which was preventing appellant from obtaining his release on bond. If they had chosen, the naval authorities could have obtained delivery of appellant into their hands since he was being held for them.

---

**2.** In other words, because of the terms of the bond imposed on the person of appellant in the State of Missouri, the civilian authorities effectively made him unavailable for return to unrestricted military control. The rule governing this case is distinguishable from *United States v. Garner*, 7 U.S.C.M.A. 578, 23 C.M.R. 42 (1957), and *United States v. Webster*, 27 C.M.R. 956 (A.F.B.R.1958), cases upon which the rule in *United States v. Lanphear*, 23 U.S.C.

M.A. 338, 49 C.M.R. 742 (1975), and the revision resulting in paragraph 164a, Manual for Courts-Martial, United States, 1969 (Revised edition), are based. In the above cited cases the releasing civilian authorities placed no geographical limitation on the military member as a condition of his release.

**1.** *See* appendix to this opinion.

Apparently, under the terms of his bond appellant could not voluntarily leave the state of Missouri without occasioning a forfeiture of the bond. However, I do not construe this circumstance as rendering him not "available" to the naval service for purposes of paragraph 164a. Instead, absent some commitment to the contrary on the part of naval authorities whereunder Missouri's jurisdiction over Dubry was retained, they were free to take appellant into custody and either physically transport him wherever they chose or order him to proceed to whatever destination the Navy selected.[2] That the Navy did not adopt such a course of action did not prevent the termination of the unauthorized absence. Of course, appellant's subsequent actions may have initiated a second period of unauthorized absence; but that is not the issue in the present case.

Accordingly, I would reverse the decision of the Court of Military Review and remand for further proceedings.

## APPENDIX

SID_____  **PRISONER'S JAIL RECORD**  soc. no. 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

| MUG NO 7374 | | PAGE NO. 252 | | FBI NO. | | | |
|---|---|---|---|---|---|---|---|
| NAME Dubry, Dannie Lewis | | | DATE OF BIRTH 4-17-46 | SPECIAL MARKS Beard | | | |
| ALIAS Dubry, Danny Lewis | | | ADDRESS 300 S. Jefferson Carterville, Mo. | | | | |
| PLACE OF BIRTH Webb City, Mo. | AGE 32 | RACE W | EYES Blue | HAIR Blond | SEX M | HT. 5-9 | WT. 165 |
| OCCUPATION Navy | PLACE OF EMPLOYMENT | | DATE ARRESTED 5-16-78 | TIME 18:15 | ARRESTING OFFICER'S NAME 75A James | | |
| CHARGE Felonious Assault | | WARR NO. 53133 (5048) | | DATE ISSUED 3-3-78 | BOND $1,000.00 $4,000.00 | | |
| 2. | | 2. | | | | | |
| 3. | | 3. | | | | | |
| HOW RELEASED Pugh Bonding app 6-5-78 | | DATE 5-25-78 | | TIME 5:30pm | OFFICER'S NAME 45 Troyer | | |
| HOLD OR WANTS HOLD US NAVY Cart Cir Ct. Recieved 5-19-78 | | | | | | | |
| RELATIVES (F) Edna Dubry (mother) | | | ADDRESS same | | | | |
| (M) | | | ADDRESS | | | | |
| REMARKS | | | | DEFENSE EXHIBIT A | | | |

[2]. It is not clear that the civil authorities imposed a limitation on appellant's leaving the state of Missouri. Instead, Dubry's unrefuted testimony was that the bondsman said, "If I left the state, he would revoke my bond and re-issue a warrant." In any event, the Navy never acceded to such conditions. Under the view of the majority opinion it would appear that if— as sometimes occurs—a service member apprehended by civil authorities is released to his Service with an understanding that he will be produced for subsequent court proceedings, he is nonetheless absent without leave because he is not "available" to the military.